601 P.2d 646 (1979)
Beverly J. CARMAN, Plaintiff-Appellee and Cross-Appellant,
v.
Eugene B. HEBER, Defendant-Appellant and Cross-Appellee.
No. 78-387.
Colorado Court of Appeals, Div. I.
July 5, 1979.
Rehearing Denied August 2, 1979.
Certiorari Denied October 29, 1979.
*647 Edwin B. Fieman, Denver, for plaintiff-appellee and cross-appellant.
Towey & Zak, James J. Zak, Denver, for defendant-appellant and cross-appellee.
KELLY, Judge.
Beverly J. Carman instituted an action against Eugene B. Heber alleging that the defendant had wrongfully interfered with certain contractual relations between Carman and Richard Salturelli. The trial court found that Heber had intentionally induced the breach of a receipt and option contract between Carman and Salturelli for the sale of Carman's business. In finding for the plaintiff, however, the court concluded that she was 40% responsible for the failure of the sale and applied the principle of comparative negligence provided for in § 13-21-111, C.R.S.1973. Heber appeals the court's finding that he intentionally induced the breach of contract. On cross-appeal, Carman challenges the court's application of the doctrine of comparative negligence. We affirm the judgment in favor of Carman, and order reinstatement of the full award of damages.
In 1972, Carman purchased from Heber 100% of the outstanding shares of stock issued by E.B.H., Inc., a Colorado corporation, which operated a business known as the Stardust Lounge. As partial payment, Carman executed and delivered to Heber, her promissory note secured by the stock.
In 1975, Carman and Salturelli executed a receipt and option contract for the sale of the business to Salturelli. During the ensuing months, Carman, her attorneys, Salturelli, and the real estate broker, all attempted to obtain from Heber a figure representing the balance due on the promissory note, and Heber indicated that the balance was $10,000 more than the actual figure. In addition, he appeared at an Arvada City Council meeting during a hearing on the transfer of the liquor license and testified that Carman had defaulted on the note and that he had begun foreclosure proceedings.
Salturelli, who was present at the meeting, informed Carman's attorney immediately afterward that he would not purchase the business. Salturelli testified at the trial that a major factor in his decision to breach the contract was Heber's failure to indicate the amount owing on the note and issue a letter authorizing its assumption. A few weeks after the breach of the contract for sale, Heber foreclosed on his note and took possession of the business, which he sold for a profit three months later.
Heber argues that there was insufficient evidence demonstrating the existence of the elements of intentionally inducing a breach of contract. We conclude otherwise.
The elements of the tort are: (1) the existence of a contract between the plaintiff and a third party; (2) knowledge by the defendant of this contract or knowledge of facts which would lead him to inquire as to the existence of the contract; (3) intent by the defendant to induce a breach of contract with a third party; (4) action by the defendant which induces a breach of the contract; and (5) damages to the plaintiff. Comtrol, Inc. v. Mountain States Telephone & Telegraph Co., 32 Colo.App. 384, 513 P.2d 1082 (1973).
*648 Of these elements, Heber challenges the existence of the contract itself by asserting that the agreement was unenforceable by virtue of the absence of mutuality of obligation between parties. We need not, however, determine whether, as between the parties, the contract was enforceable, since unenforceability between the parties is no bar to an action for interference with contractual relations. Barlow v. International Harvester Co., 95 Idaho 881, 522 P.2d 1102 (1974); Aalfo Co. v. Kinney, 105 N.J.Law 345, 144 A. 715 (E. & A.1929); W. Prosser, Torts § 129 (4th ed. 1971). Cf. Watson v. Settlemeyer, 150 Colo. 326, 372 P.2d 453 (1962). While Salturelli may have had a defense against an action on the contract that would permit him to avoid it, until he raised the challenge, the contract was a valid and subsisting relation with which Heber was not permitted to interfere. Restatement (Second) of Torts § 766, Comment f (1979).
Heber also argues that there was no evidence of intent, and no evidence that his actions induced the breach. The court could have inferred Heber's intent, however, from his testimony that he would like to have purchased the bar himself, that he knew his note was protected in the sale, and that he sold the bar at a considerable profit three months later. Furthermore, Salturelli testified that, while other factors influenced his decision, Heber's actions were the most significant reason for the breach. Thus, contrary to Heber's contention, there was evidence before the court of both intent and inducement. The trial court's judgment as to the probative effect and weight of that evidence will not be disturbed on review unless manifestly erroneous. Broncucia v. McGee, 173 Colo. 22, 475 P.2d 336 (1970).
Heber argues that the court should have found Carman to be 50% or more comparatively negligent while Carman, in her cross-appeal, argues that the trial court erroneously applied the principles of comparative negligence to the instant case in allocating 40% of the damages to her. We agree with Carman. In finding for Carman, the trial court determined that Heber had committed an intentional tort. A finding of intentional wrongdoing on the part of the defendant renders the comparative negligence statute inapplicable. See Li v. Yellow Cab Co., 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); V. Schwartz, Comparative Negligence § 5.2 (1974).
There is no merit to Heber's contention that the trial court should have allowed him to set off certain expenses related to the foreclosure against the total amount of the damages.
The judgment in favor of Carman is modified and as modified, is affirmed, and the cause is remanded with directions to enter judgment in favor of the plaintiff for the full amount of the damages ($20,241.00), plus costs and interest at the rate of 9% per annum from March 3, 1978, the date of the original judgment.
COYTE and PIERCE, JJ., concur.