Lois FIELD, Plaintiff and Appellant,

v.

The BOYER COMPANY, L.C., a Utah limited, liability company; The Boyer Company of Idaho, Inc., a Utah corporation; Mervyn's, a California corporation; James McGuire, Security Manager, Brickyard Plaza; Jefrey B. Hatch; Wilda Gene Hatch; Diane G. Orr; and John Does A through K, Defendants and Appellees.

No. 960437.

Supreme Court of Utah.

March 3, 1998.

---

Kathryn P. Collard, Salt Lake City, for Plaintiff and Appellant.

Paul S. Felt, Terry M. Plant, Bradley R. Helsten, Salt Lake City, for Defendants and Appellees.

ZIMMERMAN, Chief Justice:

Plaintiff Lois Field appeals from an interlocutory order granting the Brickyard defendants'[1] motion to have the conduct of an unknown assailant compared to their own allegedly negligent conduct in contributing to injuries suffered by Field during an assault that occurred at the Brickyard Plaza. We have jurisdiction over this matter under section 78–2–2(3)(j) of the Utah Code. The trial court ruled as follows: (i) Utah's comparative fault provision, section 78–27–38 of the Code, requires the comparison of negligent and intentional conduct in apportioning fault; and (ii) fault could be apportioned to the unknown assailant even though the assailant was not named as a party defendant. We affirm in part and reverse in part.

We begin with a brief review of the facts before turning to the standard of review and our analysis. In September of 1994, Field was an employee of Mervyn's, located in Brickyard Plaza in Salt Lake City. Brickyard Plaza is owned and operated by the Brickyard defendants. On the evening of September 7, 1994, Field left the Mervyn's store and went to her vehicle in the employee parking lot. She then walked across the lot to an area southeast of the store. As she passed some stairs on the southeast side of the Mervyn's store, she was assaulted from behind, a rope was wrapped around her neck, and she lost consciousness. While she was unconscious, Field was physically and sexually assaulted.

Field filed a complaint against Mervyn's and the Brickyard defendants, seeking damages and claiming that defendants were negligent in failing to provide adequate security for the employees and customers of the Mervyn's store and Brickyard Plaza. Mervyn's and the Brickyard defendants moved to include the fault of Field's unknown assailant in the jury's apportionment of fault among the parties, pursuant to section 78–27–38 of the Code. Field opposed the motion, but the trial court granted the motion and certified its ruling as a final judgment under rule 54(b) of the Utah Rules of Civil Procedure. The parties, having determined that the trial court's judgment may not have been validly certified under rule 54(b), jointly sought leave to have the appeal considered as an interlocutory appeal under rule 5(a) of the Utah Rules of Appellate Procedure. We granted this request and subsequently granted the interlocutory appeal.

As to the standard of review, the trial court's determination that section 78–27–38 should apply to apportion fault to Field's unknown assailant is a question of statutory construction, a purely legal conclusion, which we review for correctness. See State v. Pena, 869 P.2d 932, 936 (Utah 1994).

Moving to our analysis, section 78–27–38 of the Code provides in part:

(3) No defendant is liable to any person seeking recovery for any amount in excess

---

1. The defendants are numerous. For purposes of this case, however, defendants' arguments are identical. For ease of reference, all defendants except Mervyn's will be referred to collectively as "the Brickyard defendants."

of the proportion of fault attributed to that defendant under Section 78–27–39.

(4)(a) In determining the proportionate fault attributable to each defendant, the fact finder may, and when requested by a party shall, consider the conduct of any person who contributed to the alleged injury regardless of whether the person is a person immune from suit or a defendant in the action and may allocate fault to each person seeking recovery, to each defendant, and to any person immune from suit who contributed to the alleged injury.

In the definitions section, the statute defines "defendant" as "a person, other than a person immune from suit ... who is claimed to be liable because of fault to any person seeking recovery." Utah Code Ann. § 78–27–37(1). Further, the statute defines "fault" as

any actionable breach of legal duty, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification or abuse of a product.

*Id.* § 78–27–37(2).

The Brickyard defendants argue that they are entitled to a comparison of their allegedly negligent conduct with the intentional conduct of Field's unknown assailant. Field counters that (i) the statute's definition of "fault" precludes any comparison between negligent and intentional conduct and encompasses only comparisons between one person's negligence and another's; and (ii) the statute allows comparisons of fault only among parties to the action and does not provide for comparing the fault of an unknown assailant. We address each argument in turn.

As to the comparison of intentional and negligent conduct, we find that section 78–27–37(2)'s definition of "fault" encompasses both negligent and intentional conduct.

We look to the statute's plain language as the best evidence of legislative intent. *See Sullivan v. Scoular Grain Co. of Utah,* 853 P.2d 877, 879 (Utah 1993) (citing *Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903, 906 (Utah 1984)). When reduced to its essentials, the statute's definition of "fault" includes "any ... act ... proximately causing or contributing to injury or damages." Utah Code Ann. § 78–27–37(2). Clearly an intentional tort such as battery is an act that proximately causes or contributes to injury or damage. Thus, we conclude that the legislature included intentional acts in its comparative fault scheme.

The issue of whether section 78–27–38 allows a comparison of fault between a party defendant and a nonparty, unknown assailant is more complex. A close parsing of the statute is necessary before we can determine to whom fault may be allocated. Beginning with subsection (3), the guiding principle of this statute is that "[n]o defendant is liable ... for any amount in excess of the proportion of fault attributed to that defendant under Section 78–27–39." *Id.* § 78–27–38(3). To implement this principle, the legislature enacted subsection (4)(a) of 78–27–38, which applies when a court is "determining the proportionate fault attributable to each defendant." *Id.* § 78–27–38(4)(a). Subsection (4)(a) provides that the court may, or when requested by a party shall, "consider the conduct of any person who contributed to the alleged injury." *Id.* This broad phrase, which would appear to include all persons, whether or not a party, is followed, however, by a phrase providing that the court "may allocate fault to each person seeking recovery, to each defendant, and to any person immune from suit who contributed to the alleged injury." *Id.* Thus these two portions of subsection (4)(a) seem to conflict, one providing that the court may "consider" the fault of any person, and the other providing that the court may "allocate" fault only to plaintiffs, defendants, and persons immune from suit.[2]

---

**2.** We note that in *S.H. v. Bistryski,* 923 P.2d 1376 (Utah 1996), this court held that the comparative fault provisions of sections 78–27–37 and –38 applied to Utah's strict liability dog bite statute,

section 18–1–1, and we allowed the trial court in that case to attribute fault to the nonparty mother of a minor who had been bitten by a dog. *Bistryski,* 923 P.2d at 1382. In so holding, this

When faced with two seemingly contradictory portions of the same statute, "the Court looks to the rules of statutory construction to resolve the apparent contradiction." *Madsen v. Brown*, 701 P.2d 1086, 1089 (Utah 1985). "In cases of apparent conflict between provisions of the same statute, it is the Court's duty to harmonize and reconcile statutory provisions, since the Court cannot presume that the legislature intended to create a conflict." *Id.* at 1089–90 (citing 73 Am.Jur.2d *Statutes* §§ 254, 255 (1974)). In this case, the two portions of the statute can be reconciled and harmonized if the later language allowing the court to allocate fault only to three classes of persons— plaintiffs, defendants, and immune persons— is read as modifying the earlier language allowing the court to consider the fault of any person. Thus, the statutory scheme, taken as a whole, allows the court to consider the fault of any person, but to allocate fault only to plaintiffs, defendants, and persons immune from suit.

We can imagine situations where the conduct of an unknown tortfeasor would be "considered" by a court in determining the relevant percentages of fault attributable to a plaintiff and a defendant, but fault may not be attributed to such an unknown tortfeasor. For example, an erratic driver might cause a defendant who was negligently following too closely to swerve and hit another car whose driver was negligently driving too fast. In apportioning fault between the defendant who was following too closely and the plaintiff who was speeding and who was hit, the court might consider the fault of the erratic driver (who drove on and was never identified or made a party to the litigation) in determining the relative fault of the plaintiff and the defendant. Nevertheless, according to the terms of the statute, the court's allocation of fault to the plaintiff and the defendant would have to equal 100%, the absent driver's conduct being "considered" only in determining whether the split between the plaintiff and the defendant should be 50/50, 60/40, or some other proportion.

This reading of the statute is consistent with the mandate of section 78–27–38(3) that "[n]o *defendant* is liable to any person seeking recovery for any amount in excess of the proportion of fault attributed to that defendant under Section 78–27–39." Utah Code Ann. § 78–27–38(3) (emphasis added). The Brickyard defendants paraphrase this section as embodying the principle that no *person* should be held liable for more than his or her proportionate share of fault. They argue that this principle requires a comparison that includes Field's unknown assailant. Such a paraphrasing, however, distorts the statutory language. The statute's mandate, as embodied in subsection (3), is that no *defendant* be liable for more than the portion of fault attributed to him or her under the statutory scheme. Specifically, section 78–27–39, which is referenced in subsection (3), provides the mechanism for attributing fault only to plaintiffs, defendants, and persons immune from suit. It does not contemplate allocations of fault to nonparty tortfeasors. Thus, our reading of the statute does not violate subsection (3)'s mandate.

Further, we find the Brickyard defendants' reading of subsection (3)'s generally phrased mandate to be inconsistent with more-detailed provisions of the statute. The Brickyard defendants posit that the statute requires that no defendant shall ever be held liable for more than his or her proportionate share of fault. The statute itself, however, does contemplate a situation where defendants will be held liable for more than their share of fault. Section 78–27–39(2) sets forth the procedure for attributing fault to persons immune from suit. If the initial attribution of fault to all immune persons is less than 40%, "the trial court shall reduce that percentage or proportion of fault to zero and reallocate that percentage or proportion of fault to the other parties in proportion to the percentage or proportion of fault initially attributed to each party." *Id.* § 78–27–39(2)(a). Thus, in some instances the statutory scheme itself holds defendants liable for

court relied on the "any person" of 78–27–38(4)(a), not upon the language of the second part of subsection (4)(a). That language, allowing the court to attribute fault only to plaintiffs,

defendants, and immune persons, upon which we rely today, was not brought to our attention and was not considered in *Bistryski*.

some percentage of fault initially attributable to a person immune from suit. Our refusal to allow the attribution of fault to Field's unknown assailant thus comports with the overall statutory scheme.

We also note that the statute provides a mechanism whereby those such as the Brickyard defendants "may join as a defendant ... any person other than a person immune from suit who may have caused or contributed to the injury or damage ... for the purpose of having determined their respective proportions of fault." *Id.* § 78–27–41(1). Although the legislature did not make such joinder mandatory, this section, interpreted in the light of section 78–27–37's language allowing attribution to plaintiffs, defendants, and persons immune from suit, certainly indicates a legislative intent that defendants wishing to have their fault compared with nonparties join such nonparties under section 78–27–41 or bear the burden if such people cannot be joined.

The Brickyard defendants also argue that our reading of the statute is inconsistent with our opinion in *Sullivan v. Scoular Grain Co. of Utah,* 853 P.2d 877 (Utah 1993). In *Sullivan,* we held that a prior version of the comparative fault scheme should be read to require comparison of the fault of immune employers, even though the statutory language contemplated attributions of fault only to plaintiffs and defendants. *Sullivan,* 853 P.2d at 884. This case can be distinguished, however, because of changes in the statutory scheme since that case was decided. Partly in response to the *Sullivan* opinion, the legislature subsequently modified the statute to explicitly require the attribution of fault to immune persons. *See* Utah Code Ann. §§ 78–27–38(4)(a), –39(2). Further, our decision in *Sullivan* hinged on the mandate that "no defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault *attributable* to that defendant." *Id.* § 78–27–38 (Supp.1993) (emphasis added). We reasoned that this mandate required attribution of fault to an immune employer to avoid holding the defendant in that case liable for more than "the proportion of fault attributable to that defendant." *Sulli-*

*van;* 853 P.2d at 879. That statutory language, however, has since been modified so that no defendant may be held liable for fault in excess of the "fault *attributed to that defendant under Subsection 78–27–39.*" Utah Code Ann. § 78–27–38(3) (emphasis added). Because subsection 78–27–39 clearly allows for attribution only to plaintiffs, defendants, and immune persons, our reading of the statute to disallow attribution of fault to Field's unknown assailant cannot violate subsection (3)'s mandate. Thus, our reading of the statute does not conflict with our holding in *Sullivan.*

The trial court's ruling that Utah's comparative fault scheme requires comparison of negligent and intentional conduct is affirmed. The trial court's ruling that the statute requires attribution of fault to Field's nonparty, unknown assailant is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

HOWE, Associate C.J., concurs in the result.

STEWART, Justice, concurring in part, dissenting in part:

I agree that Utah's Comparative Fault Act, *see* Utah Code Ann. § 78–27–38, does not permit the fault of a defendant to be reduced by the fault of a nonimmune nonparty. That conclusion is solidly based on the statutory language and on sound policy.

I emphatically disagree, however, with the dictum in Chief Justice Zimmerman's opinion that the Comparative Negligence Act requires a comparison of the "fault" of an intentional tortfeasor with the "fault" of a negligent tortfeasor. Reducing the legal liability of an intentional tortfeasor by another person's negligence is contrary to terms of the Act, legislative history, and sound policy and logic.

Although the instant case involves alleged negligent defendants seeking to reduce their liability to plaintiff by the intentional fault of a third person, a rapist who is not a party to the action,[1] the legal principle Chief Justice

---

1. Plaintiff Lois Field, an employee of Mervyn's   Department Store, was sexually assaulted as she

Zimmerman argues for transcends that limited situation. The issue is one of statutory construction. If the word "fault" in Utah Code Ann. § 78–27–37(2) includes intentional culpability, then negligence and intentional misconduct must be compared in all cases. What is at issue, therefore, is whether the negligence of any person contributing to an injury—whether the negligence of a plaintiff or of a third person—can be used by an intentional tortfeasor to reduce his liability for intentionally harming the plaintiff. Thus, Chief Justice Zimmerman says that where a plaintiff sues a defendant for assault, battery, conversion, libel, or any other intentional tort, the law countenances a shifting of liability to the victim of the tort because the victim may have been careless. Put more concretely, his position is that a man sued for rape could reduce his liability for the injury he caused because the woman "invited" the rape by her failure to take reasonable precautions for her own safety. The same principle dictates that a person who steals another's property can reduce his liability because the victim failed to take sufficient precautions to protect his property. Chief Justice Zimmerman's view turns both morality and the law on their heads. The Legislature never intended such an absurd result. The purpose, text, and legislative history of the Utah Comparative Negligence Act all clearly demonstrate that the Legislature did not intend that negligence should be compared against intentional criminal-type conduct. Legal scholars, case law, logic, and sound policy all support the legislative policy.

## I. PRINCIPLES OF COMPARATIVE FAULT

Contributory negligence has never been a defense, absolute or otherwise, to an intentional tort. *See* Restatement (Second) of Torts § 481 (1965). Intentional tortious conduct has always been deemed to be categorically different from nonintentional tortious conduct.[2] Intentional torts generally require an intent or purpose to harm another. Unintentional torts do not involve an intent or purpose to harm; they involve carelessness or indifference. Prominent legal scholars have long recognized the categorical difference between intentional and unintentional torts and the inappropriateness of including intentional torts in comparative fault schemes: " '[I]f the consequences of which the plaintiff complains were intended by the defendant, contributory negligence is out of the case.' On this proposition all agree." 4 Fowler V. Harper et al., *The Law of Torts* § 22.5, at 293 (2d ed.1986) (quotations omitted). "Intentional wrongdoing is so much graver a wrong than negligence both in its social consequences and in the amount of resentment it arouses that the felt need both to deter and to punish it outweighs any social benefits that are thought to accrue from the rule of contributory negligence." *Id.* at 294. Professor Fleming also distinguishes an intended injury from the unintended consequences of wilful wrongdoing. J. Fleming, *The Law of Torts* 254 (6th ed.1983). Dean Prosser, moreover, emphasizes the extent of the categorical distinction between negligence and intentional torts: "[W]here the defendant's conduct is actually intended to inflict harm upon the plaintiff, there is a difference [from negligence], not merely in degree but in the kind of fault." William L. Prosser, *A Handbook on the Law of Torts* § 66, at 426 (4th ed.1971); *see also* 4 Fowler V. Harper et al., *The Law of Torts* § 22.5, at 294–95 (Supp.1997) (noting "clear difference in kind between the two wrongs involved").[3]

walked in Mervyn's parking lot in the Brickyard Plaza shopping mall. She sued Mervyn's and the Brickyard defendants for negligence in not using reasonable care to protect employees and customers from such assaults. Defendants do not deny that they have a legal duty to provide a reasonably safe place for their employees to take a break, but they contend that their liability for their failure to so provide should be reduced by the conduct of the assailant.

**2.** At a theoretical level, it may be said that there is not a sharp analytical distinction between in-

tentional and unintentional torts at the margins, although there certainly is in the core concepts. In the world of human behavior, the difference between a purpose to harm and carelessness is plainly clear and categorical.

**3.** Numerous courts have relied on the fundamental difference between negligence and intentional torts as noted by scholars, as did the Seventh Circuit, to hold that "[n]egligence could not be a defense" to an intentional tort. *Kerrigan v. American Orthodontics Corp.*, 960 F.2d 43, 45 (7th Cir.1992).

Moreover, the comparative fault principles were allied with actions based on negligence or similar actions. *See Black's Law Dictionary* 608 (6th ed.1990) (defining "fault" as "negligence"); 4 Harper 1986, § 22.5, at 293.

Until comparatively recently, contributory negligence was an absolute defense to a negligence action. Comparative negligence was designed "to mitigate the unjust hardships that the contributory negligence doctrine imposes on accident victims," and should not be read "to expand the operation of the discredited fault principle [embodied in contributory negligence] into areas previously free from its unwholesome influence." 4 Harper 1997, § 22.5, at 295. Rather, "[t]he new-found freedom to balance should be exercised in light of history and of sound policy." *Id.* As the court in *White v. Hansen*, 837 P.2d 1229, 1233 n. 6 (Colo.1992), stated, "[I]t is ... well settled that actions founded on intentional misconduct by the defendant were not subject to the defense of contributory negligence and are not subject to comparative fault principles."

The great majority of states that have ruled on the issue of whether comparative fault should be applied to compare intentional culpability and carelessness have held that there is a fundamental difference between intentional and unintentional torts, and they have refused to apply comparative fault concepts where an intentional tort is involved. *See* Allan L. Schwartz, Annotation, *Applicability of Comparative Negligence Principles to Intentional Torts*, 18 A.L.R.5th 525, § 2, at 533 (1994) ("The clearly prevailing view is that comparative negligence principles are not applicable to intentional torts."); *id.* § 3 (listing cases from 20 jurisdictions, including the United States, that refused to compare negligence and intentional torts);[4] 57B Am.

---

4. The following jurisdictions reject the concept that comparative fault principles apply in intentional tort cases:

**Arkansas:** The state supreme court held that comparative fault does not apply to mitigate a defendant's intentional conduct in a battery action. *Whitlock v. Smith*, 297 Ark. 399, 762 S.W.2d 782, 783 (1989).

**Colorado:** "A finding of intentional wrongdoing on the part of the defendant renders the comparative negligence statute inapplicable." *Carman v. Heber*, 43 Colo.App. 5, 601 P.2d 646, 648 (1979); *see also Finnigan v. Sandoval*, 43 Colo.App. 219, 600 P.2d 123 (1979).

**Georgia:** Two courts of appeals held that it was "well-settled" that the state's comparative negligence statute did not apply because the torts alleged by the plaintiffs were intentional. *Hopkins v. First Union Bank*, 193 Ga.App. 109, 387 S.E.2d 144, 146 (1989) (intentional infliction of emotional distress action); *Terrell v. Hester*, 182 Ga.App. 160, 355 S.E.2d 97, 98 (1987) (battery action).

**Idaho:** "It is a well-settled rule that the negligence of a plaintiff is not a defense available to a defendant who has committed an intentional tort." *Fitzgerald v. Young*, 105 Idaho 539, 670 P.2d 1324, 1326 (1983). This court of appeals holding is consistent with dictum from the Idaho Supreme Court in *Burgess v. Salmon River Canal Co.*, 119 Idaho 299, 805 P.2d 1223, 1233 (1991).

**Illinois:** The state supreme court held, "Because of the qualitative difference between simple negligence and willful and wanton conduct, and because willful and wanton conduct carries a degree of opprobrium not found in merely negligent behavior, we hold that a plaintiff's negligence cannot be compared with a defendant's willful and wanton conduct." *Burke v. Roths-*

*child's Liquor Mart, Inc.*, 148 Ill.2d 429, 170 Ill.Dec. 633, 643, 593 N.E.2d 522, 532 (1992).

**Iowa:** The state supreme court concluded that the state comparative fault statute did not apply in fraud cases. *Tratchel v. Essex Group, Inc.*, 452 N.W.2d 171, 180–81 (Iowa 1990). Also the court of appeals held that taking hostages was an intentional act and thus not within the comparative fault statute. *State v. Wagner*, 484 N.W.2d 212, 216 (Iowa Ct.App.1992).

**Maine:** The state supreme court stated, "We have never recognized contributory or comparative negligence as a defense to the intentional tort of assault and battery and we decline to do so now." Doing so, the court held, would contravene the state statute as well as "sound policy." *McLain v. Training & Dev. Corp.*, 572 A.2d 494, 497 (Me.1990) (assault and battery action).

**Massachusetts:** The state supreme court held that intentional stabbing could not be involved in comparison of fault under the Massachusetts statute. "The strong majority view across the country is that comparative fault statutes do not apply to intentional tort claims." *Flood v. Southland Corp.*, 416 Mass. 62, 616 N.E.2d 1068, 1072 (1993).

**Michigan:** "[W]here defendant intentionally commits a tort, comparative negligence is no defense which can serve to reduce his potential liability. The reason is clear from the very name of the comparative negligence doctrine. In such circumstances, defendant has simply not been negligent. There are not degrees of negligence to compare. A person's obligation to guard himself from injury caused by design is insignificant, if existent at all, compared to his obligation to guard himself from injury caused by another's simple lack of care." *Melendres v. Soales*, 105 Mich.App. 73, 306 N.W.2d 399, 403 (1981).

Jur.2d § 1165, at 90 (1989) ("The majority of cases hold that comparative negligence is not applicable in intentional tort cases."); *see, e.g., Wal–Mart Stores, Inc. v. McDonald,* 676 So.2d 12, 21 (Fla.Dist.Ct.App.1996) ("Because ... intentional torts are of a fundamentally different nature than negligent torts, ... a true comparison of fault based on an intentional act and fault based on negligence is, in many circumstances, not possible," and intentional wrongdoing differs from negligence "not merely in degree but in the kind of fault ... and in the social condemnation attached to it."); *Veazey v. Elmwood Plantation Assoc., Ltd.,* 650 So.2d 712, 719–20 (La.1994) (same); *Burke v. Rothschild's Liquor Mart, Inc.,* 148 Ill.2d 429, 170 Ill.Dec. 633, 643, 593 N.E.2d 522, 532 (1992) ("Because of the qualitative difference between simple negligence and willful and wanton conduct, and because willful and wanton conduct carries a degree of opprobrium not found in merely negligent behavior, we hold that a plaintiff's negligence cannot be compared with a defendant's willful and wanton conduct.").

## II. UTAH COMPARATIVE NEGLIGENCE ACT

It is axiomatic that " '[t]he primary rule of statutory interpretation is to give effect to the intent of the legislature in light of the purpose the statute was meant to achieve.' " *Sullivan v. Scoular Grain Co. of Utah,* 853 P.2d 877, 880 (Utah 1993) (quoting *Reeves v.*

*Gentile,* 813 P.2d 111, 115 (Utah 1991) (footnote omitted)). To that end, a statute should be construed as a comprehensive whole, not in a piecemeal fashion. *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1045 (Utah 1991). In accord with that principle, it is imperative that single words or phrases in a statute not be defined or construed apart from the context in which they appear and the overall statutory purpose. *Richardson v. Matador Steak House,* 948 P.2d 347 (Utah 1997) (holding that term "third person" had to be construed more narrowly than plain meaning because statutory context so required).

Section 78–27–38 was first enacted in 1973 as part of the original Utah Comparative Liability Act.1973 Utah Laws ch. 209, § 1. The purpose of the Act was to ameliorate the harsh common law rules that made contributory negligence, no matter how slight, an absolute defense to an action by a plaintiff for negligence and barred all recovery. The point was to broaden an injured plaintiff's right to recover while allowing a negligent defendant the right to reduce his liability by the negligence attributable to the plaintiff. 1973 Utah Laws ch. 209. Thus, section 1 of the Comparative Negligence Act eliminated contributory negligence as an absolute bar to a plaintiff's recovery for "negligence or gross negligence" as long as the plaintiff's negligence was proportionally less than the defendant's. *Id.* § 1.

**Minnesota:** The state supreme court held, "Without question, principles of comparative negligence would not apply to an intentional tort; we have never so applied them." *Florenzano v. Olson,* 387 N.W.2d 168, 175 (Minn.1986).

**Mississippi:** The state supreme court held, "The authorities in this state and elsewhere are unanimous in declaring that the defenses of contributory or comparative negligence have no application to cases of intentional tort such as assault and battery." *Graves v. Graves,* 531 So.2d 817, 820 (Miss.1988).

**Ohio:** The state supreme court held, under its comparative fault statute, that negligence of another is not a defense to a defendant's intentional tort. *Schellhouse v. Norfolk & W. Ry.,* 61 Ohio St.3d 520, 575 N.E.2d 453, 456–57 (1991).

**South Dakota:** The state supreme court held that instructing the jury in comparative fault was reversible error by the trial court in a battery action. *Frey v. Kouf,* 484 N.W.2d 864, 869 (S.D. 1992).

**Texas:** The court of civil appeals held that the statute relating to comparative fault applied only to actions based in negligence. *McCrary v. Taylor,* 579 S.W.2d 347, 349–50 (Tex.Civ.App.1979).

**Vermont:** The state supreme court held that comparative negligence did not apply when damages assessed were based on deliberate, not negligent, acts. *Stephan v. Lynch,* 136 Vt. 226, 388 A.2d 376, 379 (1978).

**Washington:** "A plaintiff's contributory fault cannot be used to reduce a defendant's liability for assault and battery." *Honegger v. Yoke's Washington Foods, Inc.,* 83 Wash.App. 293, 921 P.2d 1080, 1082 (1996).

**Wisconsin:** The state supreme court refused to apply the comparative negligence statute to intentional tort. *Schulze v. Kleeber,* 10 Wis.2d 540, 103 N.W.2d 560 (1960).

**Wyoming:** The Tenth Circuit, applying Wyoming law, held that the state would not apply comparative fault in a suit alleging outrageous conduct related to state elections. *Bell v. Mickelsen,* 710 F.2d 611 (10th Cir.1983).

The Liability Reform Act of 1986 amended the 1973 Act. As amended, section 78–27–37(2) read:

> "Fault" means any actionable breach of legal duty, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification or abuse of a product.

Utah Code Ann. § 78–27–37(2) (1997). The Reform Act did not alter the basic principles of comparative negligence contained in the 1973 Act but broadened the statute to apply comparative principles in products liability and breach of warranty cases so that defenses such as misuse, abuse of product modification, etc., were no longer absolute bars to recovery but operated only to reduce a plaintiff's recovery, as in negligence cases. 1986 Utah Laws ch. 199. This broadening did not, however, include any claims for relief that involved an intent or purpose to harm.

To make comparative principles apply in products liability and breach of warranty cases, the Liability Reform Act substituted the term "fault" for the term "negligence" in section 78–27–37(2). This change was intended to reflect the abolition of absolute defenses and the adoption of comparative principles that were established in *Mulherin v. Ingersoll–Rand Co.*, 628 P.2d 1301 (Utah 1981), which held products liability cases subject to comparative principles. Nothing more than that limited expansion of comparative principles was either intended or appropriate. *See* Statement of Steve Mecham, Utah Senate, 46th Leg.1986, General Sess., Senate Day 31, Records No. 63 (Feb. 12, 1986). Significantly, the title of section 2 of the Act as stated in the 1986 session laws, as well as the title of Utah Code Ann. § 78–27–38, is "Comparative negligence." 1986 Utah Laws ch. 199, § 2.

The legislative history of the Liability Reform Act of 1986 provides no basis for concluding that the Legislature intended to include intentional wrongdoing in the term "fault" or that the Legislature intended comparative principles to apply to intentional torts. Senator Lyle Hillyard stated during debate on the Act, "I understand *the word 'fault' and that's negligence or not doing what you're supposed to, and that's a normal negligent recovery.*" Floor Debate S.B. 64, Utah Senate, 46th Leg.1986, General Sess., Senate Day 31, Records No. 63 (Feb. 12, 1986) (emphasis added). An attorney for the drafter of the bill stated when questioned by the Senate, "This is a comparative negligence statute." *Id.* Statement of Steve Mecham.

The word "fault" in section 78–27–37(2) is defined to include actionable claims for relief based on negligence, products liability, and breach of warranty and defenses to those claims for relief, such as contributory negligence, assumption of risk, misuse, and modification or abuse of a product. Notwithstanding such specificity in referring to specific claims for relief and defenses to those claims for relief, section 78–27–37(2) does not refer to any intentional tort claims for relief or any defenses to such claims. The categorical distinction between intentional and unintentional torts is clearly maintained.

It is, at best, far-fetched to say that the word "fault" as used in the statute includes intentional torts and requires a logically impossible comparison of intentional, criminal-like culpability against mere carelessness when the word "fault" does not denote intentional misconduct and the legislative history evidences no intent to include intentional torts. It is simply implausible to ascribe to the Legislature an intent to include within the comparative fault scheme one of the main branches of tort law when there is no reference to that branch of the law or to any specific intentional tort claims, especially in view of the fact that the Legislature referred with such specificity to various unintentional causes of action and defenses thereto.

Canons of statutory construction require that only tortious conduct similar to the claims for relief listed in section 78–27–37(2) be included within the scope of that section. Since intentional torts are categorically different from unintentional torts, intentional torts should not be included. The maxim *expressio, unius est exclusio alterius,* the

expression of one thing is the exclusion of another, supports the view that the Legislature intended to exclude intentional tortious conduct. *See Salt Lake City v. Ohms*, 881 P.2d 844, 855 (Utah 1994). The canons *noscitur a sociis*, " 'it is known from its associates,' " and *ejusdem generis*, " 'of the same kind,' " hold that general terms in a statute should "be given a meaning that is restricted to a sense analogous to the [more] specific terms." *Nephi City v. Hansen*, 779 P.2d 673, 675 (Utah 1989) (quoting *In re Disconnection of Certain Territory*, 668 P.2d 544, 547–48 (Utah 1983)); *see also Morton Int'l, Inc. v. Auditing Div.*, 814 P.2d 581, 590–91 (Utah 1991); *Heathman v. Giles*, 13 Utah 2d 368, 369–70, 374 P.2d 839, 840 (1962).

Furthermore, the Legislature has clarified that the claims for relief and defenses listed in section 78–27–37(2) are meant to have a restrictive effect on the construction of that section. In 1994, the Legislature amended section 78–27–37(2) and made clear that the section was meant to have a meaning restricted to the unintentional types of claims and defenses listed in that section. Prior to 1994, that section stated just before it listed the causes of action, that it "included but was not limited to" the following claims and defenses. The 1994 amendment deleted the phrase "but was not limited to." 1994 Utah Laws ch. 221, § 2. Clearly the Legislature intended to limit comparative fault principles to the types of claims and defenses specified in the statute.

The sole basis for Chief Justice Zimmerman's position is that section 78–27–37(2) states that "fault" is an "actionable breach of legal duty," which includes intentional torts. The difficulty with that position is three-fold. First, if the words "actionable breach of legal duty" can be construed to include intentional torts, then they must also be construed to apply to breach of contract actions and actions for breach of statutory duties since those actions also involve an "actionable

breach of legal duty." Such a broad construction of section 78–27–37(2) is wholly indefensible. Applying comparative fault principles in breach of contract actions would create havoc of unprecedented proportions.

Second, the term "actionable breach of legal duty" is restricted by the term "fault" so that not every "actionable breach of legal duty" is meant, but only those that involve "fault." The plain meaning of the term "fault" means unintentional tortious conduct, i.e., negligence and cognate actions. *Black's Law Dictionary* 608 (6th ed.1990) defines "fault" in just that fashion: "Negligence; an error or defect of judgment or of conduct; any deviation from prudence, duty, or rectitude; any shortcoming, or neglect of care or performance resulting from inattention, incapacity, or perversity; a wrong tendency, course, or act; bad faith or mismanagement; neglect of duty." This definition is sufficiently broad to include products liability and breach of warranty.[5]

Third, as noted above, the Legislature specified the types of "fault" and "actionable breach[es] of legal duty" it meant to include in the comparative fault scheme when it listed unintentional-type torts, e.g., negligence, products liability, and breach of warranty. By not including any references to intentional torts, it intended to exclude them from the comparative fault scheme.

A basic principle of comparative fault law is that comparison of fault must be reciprocal between the parties. That is, each party must be able to argue that its fault should be reduced or offset by another party's fault in causing the injury. Thus, the term "fault" in section 78–27–37(2) is defined in terms of both actionable claims for relief (e.g., negligence, strict liability, and products liability) and defenses (e.g., contributory negligence, assumption of risk, and misuse, modification, or abuse of a product) as coming within the statute. Utah Code Ann. § 78–27–37(2). However, a realistic comparison of fault in

---

5. See 63 Am.Jur.2d § 545, which states that while strict liability focuses on the nature of a product instead of on a defendant's conduct, actions in negligence and strict products liability have three essential elements in common: (1) a duty to anticipate and reasonably act to prevent hazards; (2) breach of that duty; and (3) injury proximately caused by the breach. Compare 63 Am.Jur.2d § 545 with 57A Am.Jur.2d § 35, which states that negligence, which is inadvertent misconduct, and intentional torts, arising from premeditation or formed intention to inflict injury, are mutually exclusive.

the instant case is simply not possible. Comparing a defendant's negligence and a rapist's intentional tort results in an absurdity; it is a comparison of unlikes, of apples and oranges. Moreover, comparison would allow the *assailant* to reduce his liability for sexually assaulting plaintiff by the Brickyard defendants' negligence in providing inadequate lighting or even by plaintiff's negligence in not taking adequate measures to protect herself from the assault. That notion is preposterous. The legal obligation not to assault or rape is absolute. The law does not impose on a victim a duty to avoid a criminal act by another. How can Chief Justice Zimmerman's lead opinion countenance the proposition that a rapist's liability can be reduced because the victim imprudently let the rapist into her home after a date? How can the lead opinion countenance the proposition that a murderer's liability in a wrongful death action can be reduced because a landlord failed to repair an apartment building's locks? If, as must surely be law, the rapist who assaulted Lois Field should not be allowed to reduce his liability by the Brickyard defendants' negligence, it is not logically possible to permit the Brickyard defendants to reduce their liability by offsetting the assailant's criminal, intentional "fault" against their negligence, as Chief Justice Zimmerman proposes.

The principle that should apply in this case was applied by the Kansas Supreme Court in *Kansas State Bank & Trust Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 819 P.2d 587, 606 (1991), in holding that a bus driver's intentional sexual abuse of a special education student could not be compared against the negligence of a school district and a transportation company that failed to take reasonable measures to prevent such intentional wrongs. "Negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent." *Id.* 819 P.2d at 606. Or as stated by a Florida appellate court, "It is neither unfair nor irrational for an innocent plaintiff to collect full damages from negligent defendants who knew, or should have known, that an injury would be intentionally inflicted and failed in their duty to prevent it." *Wal–Mart Stores*, 676 So.2d

at 22; *see also Cortez v. University Mall Shopping Ctr.*, 941 F.Supp. 1096 (D.Utah 1996).

We have held that a premises owner "must exercise due care and prudence for the safety of business invitees" and that the duty extends to protecting against "criminal acts by third parties." *Steffensen v. Smith's Management Corp.*, 862 P.2d 1342, 1344–45 (Utah 1993). This duty, however, " 'does not arise until the business owner knows, or should know, that criminal acts are likely to occur.' " *Id.* at 1345 (quoting *Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991)); *Mitchell v. Pearson Enters.*, 697 P.2d 240, 243 (Utah 1985); *see also Nero v. Kansas State Univ.*, 253 Kan. 567, 861 P.2d 768 (1993) (holding that duty of landlord to protect arises only when impending danger becomes apparent, or circumstances are such that reasonably careful person was on notice of potential danger). As Magistrate Judge Boyce noted in a case nearly identical to that before us, "[T]he defendant's duty is secondary to the assailant's conduct" because the duty "is to act against the anticipated criminal wrong of another to prevent the misconduct of the third person." *Cortez*, 941 F.Supp. at 1099–1100.

Given defendants' duty to provide a safe workplace and their breach of that duty, it would be patently unfair to allow their liability to a faultless, injured plaintiff to be reduced or even eliminated by the culpability of an intentional wrongdoer, thereby depriving the faultless plaintiff of an adequate remedy or any remedy at all. Such an application of comparative principles would eviscerate defendants' duty to prevent such a wrong. *See id.* at 1099 ("To require comparison distorts the protections a plaintiff should be able to claim from a defendant's duty to protect."); *Kansas State Bank & Trust*, 819 P.2d at 605–06.

Finally, it should be noted that only by not allowing the assailant's "fault" in this case to reduce or eliminate defendants' liability can defendants' legal duty to provide safe premises for their employees be given full force. Nevertheless, defendants do have an independent cause of action against the assailant

for common law indemnification because their liability is secondary and derivative from the assailant's primary liability. *Salt Lake City v. Schubach*, 108 Utah 266, 284–86, 159 P.2d 149, 157–58 (1945); *see also* 79 A.L.R.4th 278 § 2(a) (1990).

DURHAM, J., concurs in Justice STEWART's concurring and dissenting opinion.

RUSSON, Justice, dissenting:

I respectfully dissent from Chief Justice Zimmerman's conclusion that the defendants in this case are not entitled to an allocation of fault between defendants and the unknown assailant.

The guiding principle of our comparative fault statute is that "[n]o defendant is liable to any person seeking recovery for any amount in excess of *the proportion of fault attributed to that defendant* under section 78–27–39." Utah Code Ann. § 78–27–38(3) (emphasis added). To determine fault consistent with this guiding principle, the fact finder must be able to allocate fault among all the defendants who contributed to the plaintiff's injuries.

Chief Justice Zimmerman has concluded that the unknown assailant is not a defendant in this case and therefore cannot be attributed fault under section 78–27–39. I disagree. Section 78–27–41, which provides for the joinder of defendants for the purpose of proportioning fault, provides:

A person seeking recovery, or any defendant who is a party to the litigation, *may join as a defendant*, in accordance with the Utah Rules of Civil Procedure, *any person* other than a person immune from suit *who may have caused or contributed to the injury or damage for which recovery is sought, for the purpose of having determined their respective proportions of fault.

Utah Code Ann. § 78–27–41(1) (1996) (emphasis added).

Chief Justice Zimmerman states that this section "indicates a legislative intent that defendants wishing to have their fault compared with nonparties join such nonparties under section 78–27–41 or bear the burden if such people cannot be joined." The Chief Justice, however, ignores the language of this section providing for joinder by the plaintiff and overlooks the fact that the plaintiff in this case has indeed joined the unknown assailant as a defendant. In paragraph 15 of her complaint, plaintiff names

Defendant "I", "J", and "K", those other persons, corporations, or other entities *whose negligence or other wrongful conduct contributed to the injuries and damages suffered by the Plaintiff Lois Field*, whose true and correct names and identities are otherwise unknown to Plaintiff Lois Field, but which will be substituted by amendment when ascertained.

(Emphasis added.) Thus, the unknown assailant is clearly a "defendant," which the comparative negligence statute defines as "a person ... who is claimed to be liable because of fault to any person seeking recovery." Utah Code Ann. § 78–27–37(1).

According to rule 9(a)(2) of the Utah Rules of Civil Procedure, when a party does not know the name of an adverse party, she may state that fact in the pleadings and "such adverse party may be designated in any pleading or proceeding *by any name*; provided, that when the true name of such adverse party is ascertained, the pleading or proceeding must be amended accordingly." Utah R. Civ. P. 9(a)(2) (emphasis added). Thus, this plaintiff has complied with section 78–27–41, as well as with the Utah Rules of Civil Procedure, in joining the assailant as a "defendant." It is irrelevant that the assailant's true identity is not known, that he has not been served with process, and that judgment may not be entered against him. Pursuant to section 78–27–41, the assailant qualifies as "any person ... who may have caused or contributed to the injury or damage for which recovery is sought," and he therefore qualifies as a "defendant" *for the purpose of determining respective proportions of fault.*

This case is not one in which the defendant has conjured up a third-party "phantom" wrongdoer whose existence is at issue. All parties here agree that plaintiff was attacked and injured by an unknown assailant. Thus, the fact finder must not only consider, but

must also allocate to the intentional tortfea-sor who undisputedly injured plaintiff, his respective proportion of fault for causing those injuries. Only then can the fact finder fairly and honestly determine the proportion of fault attributable to the other defendants in this case and satisfy section 78–27–39.[1]

1.  Chief Justice Zimmerman points out in a foot-note that our opinion in *S.H. v. Bistryski*, 923 P.2d 1376 (Utah 1996), allowed fault to be attrib-uted to the "nonparty" mother of a minor who had been bitten by a dog and that we did not consider the second part of section 77–27–38(4)(a), which permits attribution of fault to only three classes of persons.

While the Chief Justice correctly notes that we did not consider the second part of section 77–27–38(4)(a), he labels the mother a "nonparty," thereby implying that the mother was not prop-erly considered for purposes of proportioning fault. However, the statute defines "person seeking recovery" as "any person seeking dam-ages or reimbursement on its own behalf, *or on behalf of another for whom it is authorized to act as legal representative.*" Utah Code Ann. § 78–27–37(4) (emphasis added). Because the mother was authorized to act as the child's legal repre-sentative and bring suit on the child's behalf, the mother qualified as a "person seeking recovery" under the statute. As such, she could be attrib-uted her proportion of fault under the statute. Therefore, the result in *Bistryski* would be the same under the approach in this dissent.