Christian Dan RICHARDSON and Jessica Richardson, by and through their father and general guardian, Dan L. Richardson, Plaintiffs–Appellants,

v.

NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION, a corporation, and, Toyota Motor Sales U.S.A., Inc., a corporation, Defendants–Appellees.

No. 96–4085.

United States Court of Appeals,
Tenth Circuit.

Feb. 23, 1999.

BEFORE: TACHA, LUCERO, Circuit Judges, and DANIEL, District Judge.*

### CERTIFICATION OF QUESTION OF STATE LAW

DANIEL, Circuit Judge.

The United States Court of Appeals for the Tenth Circuit, pursuant to Tenth Circuit Rule 27.1 and Utah Rule of Appellate Procedure 41, hereby certifies to the Supreme Court of Utah the following question of Utah law which would be determinative in the above-captioned matter now pending before this court and which is not clearly answered by controlling precedent in the decisions of the Utah Supreme Court:

> Under Utah law, may plaintiffs who have entered into a judicially approved settlement with multiple defendants after a trial in which a jury allocated 100% of the fault among the parties pursuant to the Utah comparative fault scheme, Utah Code Ann. §§ 78–27–37 to –43, maintain a subsequent tort action for the same injuries, arising out of the same transaction or occurrence, against additional known defendants who were not parties to the first action?

We do not mean to limit by our statement of this question the Utah Supreme Court's

---

* The Honorable Wiley Y. Daniel, District Judge for the United States District Court for the District of Colorado, sitting by designation.

scope of inquiry or consideration of the issues involved.

## I. Background

On July 3, 1989, the Toyota Landcruiser in which plaintiffs Christian Dan Richardson and Jessica Richardson were riding crashed into a Navistar truck parked on the shoulder of Interstate 15 near Lindon, Utah, seriously injuring plaintiffs and killing their mother, stepfather, and half-sister. Plaintiffs brought a negligence action in Utah state court against various parties but did not include Navistar International Transportation Corp. ("Navistar") or Toyota Motor Sales U.S.A., Inc. ("Toyota") in that suit. In a bifurcated proceeding, the jury returned a special verdict allocating 100% of fault among the defendants named in the first suit and the driver of the Landcruiser. The parties to the first suit settled before the damages stage of the trial, and, on October 26, 1992, the trial court entered a judgment of dismissal with prejudice in the state court action.

Plaintiffs filed the instant action against defendants Navistar and Toyota on August 14, 1995, in federal district court. The complaint asserted negligence and strict product liability claims. Defendants raised the defense of collateral estoppel and moved to dismiss the suit based on the fact that a jury had already allocated 100% of the fault in the prior state court proceeding, thereby precluding the Richardsons from relitigating the same claim against defendants. Plaintiffs argued that the fault of Navistar and Toyota and the issue of damages had not previously been litigated. Following oral argument on the motion, the district court, ruling from the bench, granted defendants' motion for summary judgment and entered a formal judgment on March 20, 1996. Plaintiffs appealed to this court.

## II. Discussion

This case actually involves two related questions, both of which require application of Utah's comparative negligence law. Utah comparative negligence law imposes liability based on "fault." *See* Utah Code Ann. § 78–27–38. The law defines fault comprehensively as:

> any actionable breach of legal duty, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification, or abuse of a product.

*Id.* § 78–27–37(2). Thus, a jury's apportionment of fault can involve all theories and parties contributing to causation and damages. In the instant case, the jury apportioned fault but did not consider whether Navistar and Toyota contributed to the accident and associated injuries. This raises the first question: Are plaintiffs who have already litigated 100% of fault in one proceeding barred from subsequently litigating fault against different defendants, either by collateral estoppel or a rule requiring that all fault be apportioned in a single action?

The jury in this case did not award damages because the parties settled after the first phase of the trial. This raises the second question: Even if Utah imposes a one action rule or collateral estoppel for subsequent claims, does the rule apply in a case where the jury apportioned fault but did not award damages?

The First Circuit, sitting in diversity and addressing an almost identical question of New Hampshire law, aptly framed the issue in the first question:

> If the controlling principles of comparative fault in a particular jurisdiction require a comparison between a plaintiff's misconduct and that of the named defendant(s), and no one else, then a determination of comparative negligence in one suit would likely be irrelevant to subsequent actions against a different defendant or set of defendants. The converse, however, is equally true. If, under the applicable law of comparative fault, the jury is to determine plaintiff's causal misconduct in relation to all the world, then its verdict becomes the last word on the subject and should enjoy collateral estoppel effect.

*Kathios v. General Motors Corp.*, 862 F.2d 944, 949 (1st Cir.1988) (citations omitted). However, unlike the First Circuit in *Kathios*, we do not find a clear answer to this question in applicable state law.

Plaintiffs argue that the permissive language of Utah Code Ann. § 78–27–41(1), which provides that "[a] person seeking recovery . . . *may* join as a defendant . . . any person other than a person immune from suit who may have caused or contributed to the injury . . . for the purpose of having determined their respective proportions of fault" (emphasis added), does not require a plaintiff to "sue now or forever hold his or her peace" with respect to claims against potential defendants. In fact, plaintiffs contend that the permissive joinder provision demands an inference that the Utah legislature intended to permit successive claims. Plaintiffs note that the Supreme Court of Iowa reached this conclusion under a similar statutory scheme in *Selchert v. State*, 420 N.W.2d 816, 819–20 (Iowa 1988). The Iowa Supreme Court concluded that the Iowa comparative fault law had not "effectively repealed the rules of civil procedure permitting, but not requiring, joinder of claims and parties at the plaintiff's discretion" and that plaintiffs could therefore bring successive suits in an effort to recover damages. *Id.* at 821.

The Utah Supreme Court's recent decision in *Field v. Boyer Co.*, 952 P.2d 1078 (Utah 1998), may provide additional support for plaintiffs' position. In *Field*, the Utah Supreme Court held that a jury may consider the fault of immune parties but not the fault of other nonparty tort-feasors in apportioning fault. *See id.* at 1081–82. This conclusion reduces the chance that a jury will consider all possible defendants in its fault determination and may lend support to the inference that the Utah legislature intends to allow multiple actions.

Defendants counter that the instant case presents the identical issue litigated in plaintiffs' first lawsuit—allocation of fault for injuries and damages pursuant to § 78–27–38 for the July 1989 accident. They claim that the broad definition of "fault" in § 78–27–37(2), which encompasses all possible causes of injury or damages, would include any damages caused or enhanced by Navistar or Toyota. Defendants argue that because a jury already determined and apportioned fault in the first suit, collateral estoppel bars further litigation of fault. Similarly, defendants contend that Utah's statutory scheme requires that all fault be decided in one action. Ac-

cording to defendants, this conclusion finds strong support in the Kansas Supreme Court decision of *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 634 P.2d 1127 (1981). In that case, which involved a comparative fault statute with a permissive joinder provision, the Kansas Supreme Court adopted a "one action" rule, finding that the permissive joinder provision was not dispositive and that the state legislature had intended for all liability to be apportioned in a single proceeding so that no defendant would be responsible for more than his or her share of fault. *See id.* at 1129–30.

Defendants also cite *Sullivan v. Scoular Grain Co.*, 853 P.2d 877 (Utah 1993), in support of their position. The Utah Supreme Court in *Sullivan* found that the main purpose of Utah's comparative fault scheme was to insure defendants were not "subject[ ] . . . to liability in excess of their proportion of fault." *Id.* at 880. The court drew upon this purpose to conclude that Utah law allowed a jury to include in apportionment the fault of an immune nonparty employer. *See id.* The court noted that its conclusion was consistent with general comparative fault theory and that "it is accepted practice for the jury to apportion the comparative fault of all tort-feasors when comparative negligence is at issue." *Id.* at 882–83. Defendants point to both the *Sullivan* court's holding and its broader reasoning as support for their conclusion that plaintiff may only litigate one action. We note, however, that after the parties filed their briefs in the instant case, the Utah Supreme Court decided the *Field* case, which potentially calls into question the application of the comparative fault theory cited in *Sullivan* as well as the *Sullivan* court's conclusion that the main purpose of Utah comparative fault scheme is limiting defendants' liability to no more than their proportion of fault. *See Field*, 952 P.2d at 1081–82.

This case presents an important question of Utah tort law. The Utah statutory scheme at issue, however, is ambiguous, and the Utah cases do not clearly address or answer the question. Furthermore, authority from other jurisdictions is conflicting. *Compare Samuelson v. McMurtry*, 962

S.W.2d 473, 476 (Tenn.1998) (adopting one action rule), *and Albertson*, 230 Kan. 368, 634 P.2d 1127, 1132 (1981) (same), *and Kathios v. General Motors Corp.*, 862 F.2d 944, 951 (1st Cir.1988) (same, applying New Hampshire law), *with Selchert v.. Iowa*, 420 N.W.2d 816, 821 (Iowa 1988) (rejecting one action rule). *Cf. Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608, 614 (Minn.1988) (holding an insurance arbitration did not preclude litigation of fault against defendant who was unidentified party at time of arbitration). Without a controlling disposition and interpretation by the Utah Supreme Court of the question presented, this court and lower federal courts cannot resolve with confidence the interests of the parties in this and other similar cases.

Accordingly, the undersigned presiding judge has prepared and submits this certification of a state law question to the Utah Supreme Court, in accordance with Utah Rule of Appellate Procedure 41. The clerk of this court is directed to transmit a copy of this certification order to counsel for all parties to the proceedings in this court. The clerk shall also transmit to the Supreme Court of Utah a certified copy of this order, together with copies of the briefs filed in this court, copies of the district court's judgment, and either the original or a copy of the record as filed in this court by the clerk of the United States District Court for the District of Utah. Pursuant to Utah Rule of Appellate Procedure 41(f), the fees and costs of this certification shall be divided equally among the parties.

This appeal is ordered STAYED pending resolution of the question certified herein.