Daniel C. BROWN, Plaintiff
and Appellee,

v.

BOYER–WASHINGTON BOULEVARD ASSOCIATES, a Utah limited partnership, Boman & Kemp Steel and Supply Company, Inc., a Utah corporation, and Jacobsen–Robbins Construction Company, a Utah corporation, Defendants.

JACOBSEN–ROBBINS CONSTRUCTION COMPANY, a Utah corporation, Third–Party Plaintiff and Appellant,

v.

CCC & T, a Utah corporation, and Boman & Kemp Steel and Supply, Inc., a Utah corporation, Third–Party Defendants and Appellees.

No. 910082.

Supreme Court of Utah.

June 30, 1993.

L. Rich Humpherys, Mark L. Anderson, Karra J. Porter, Salt Lake City, for Jacobsen–Robbins.

James R. Black, Salt Lake City, for CCC & T.

Robert G. Gilchrist, Salt Lake City, for Bowman & Kemp.

Roger D. Sandack, Edward B. Havas, W. Brent Wilcox, Salt Lake City, for Brown.

HOWE, Associate Chief Justice:

Defendant Jacobsen–Robbins Construction Company ("Jacobsen") appeals from an order dismissing its third-party complaint against CCC & T, Inc., and from an order granting defendant Boman & Kemp Steel and Supply Company, Inc. ("Boman"), summary judgment on Jacobsen's cross-claim against it. The trial court certified the two interlocutory orders as final and appealable pursuant to rule 54b, Utah Rules of Civil Procedure.

Jacobsen contracted as a general contractor to construct a six-story office building in Ogden for Boyer–Washington Boulevard Associates ("Boyer"). One term of the contract required Jacobsen to install a safety cable around all elevated exterior portions of the building. Jacobsen subsequently subcontracted with Boman to supply and erect all steel necessary in the construction of the building but not to install the safety cable. Jacobsen kept that duty. Boman, in turn, contracted with CCC & T to erect the steel.

Plaintiff Daniel Brown was a welder employed by CCC & T. His duties required him to weld metal flooring sheets. He secured the flooring sheets to the steel framework of the building at various points using welding equipment while wearing a sight-restricting welder's mask. As Brown began to weld along a floor beam, he would place a weld and then step sideways to his left. While attaching the flooring on the fourth floor, Brown lost track of where he was in relation to the side of the building. He stepped off the building at a place where there was a gap in the safety cable which had been strung by Jacobsen. Brown was seriously injured and received workers' compensation benefits from CCC & T pursuant to the Utah Workers' Compensation Act, Utah Code Ann. §§ 35–1–1 to –108 (1988 & Supp.1992).

Brown brought this action against Jacobsen and Boyer for damages, alleging that his injuries were caused by Jacobsen's failure to install adequate safety cables to protect construction workers. Jacobsen then filed a third-party complaint against CCC & T after a representative of the Utah Industrial Commission's Division of Occupational Safety and Health investigated the accident and concluded that CCC & T had failed to train Brown in safe welding procedures. The third-party complaint did not seek money damages because CCC & T was immune from tort liability under the exclusive remedy provision of the Workers' Compensation Act, section 35–1–60, but sought only the apportionment of CCC & T's fault. Jacobsen's complaint was in pursuance of Utah Code Ann. § 78–27–41, which provides that any defendant who is a party to litigation may join as parties any defendants who have caused or contributed to the injury or damage for which recovery is sought for the purpose of determining their respective proportions of fault. Section 78–27–38 provides that "no defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributable to that defendant."

Jacobsen also filed a cross-claim against Boman, seeking indemnity for any liability it might incur. The cross-claim was based on indemnity provisions contained in both the prime contract and the subcontract.

CCC & T moved the trial court to dismiss the third-party complaint on the ground that it was immune from liability to Jacobsen under section 35–1–60 and that it could not be joined as a defendant for the purpose of apportioning fault. The court granted CCC & T's motion, ruling that "no evidence of CCC & T's conduct will be submitted to the finders of fact in this case.... [N]o comparison of CCC & T's conduct with defendants' and plaintiff's fault [will] be allowed at trial."

Subsequently, Boman moved for summary judgment on Jacobsen's cross-claim for indemnity. The trial court granted the motion without explaining the basis for its ruling other than that the cross-claim was "found to be barred by Utah law." Jacobsen appeals.

## THIRD–PARTY COMPLAINT

■ The trial court erred in dismissing Jacobsen's third-party complaint against CCC & T. Since this case was argued, we have decided *Sullivan v. Scoular Grain Co.*, 853 P.2d 877 (Utah 1993), where we held that the fact finder must account for the relative proportion of fault of a plaintiff's employer that may have caused or contributed to an accident even though the employer is immune from suit. We reached that result because under section 78–27–38 Jacobsen cannot be held liable for any amount in excess of the proportion of fault attributable to it, as fully explained in *Sullivan.* This limitation on liability necessitates that the fact finder determine the proportion of fault (if any) attributable to Brown's employer.

## CROSS–CLAIM

■ In its cross-claim against Boman, Jacobsen sought "full and complete indemnity for all claims and liabilities, court costs, attorneys' fees and other litigation expenses" incurred by Jacobsen in this action brought by Brown. Jacobsen relied upon a provision for indemnity contained in the prime contract between Jacobsen and the owner, Boyer, which provision Jacobsen contended was incorporated by reference into its subcontract with Boman and there-

fore was binding on Boman. Additionally, in seeking indemnity, Jacobsen relied upon a separate and distinct provision in the subcontract. We will examine those provisions.

In the subcontract, Boman agreed to be bound to Jacobsen "by all obligations of the prime contract as they may apply to the work herein described as if the contractor were in the place of the owner, and subcontractor were in place of the contractor." In other words, Boman obligated itself to perform under the terms of the prime contract between the owner and Jacobsen as though Jacobsen were the owner and Boman were the general contractor. After substituting Jacobsen in place of the owner and Boman in place of the general contractor, paragraph 3.18.1 of the prime contract can be summarized to provide:

> To the fullest extent permitted by law, Boman shall indemnify and hold harmless Jacobsen from and against claims, damages, losses and expenses arising out of or resulting from performance of the work, provided that such claim, damage, loss or expense is attributable to bodily injury, but only to the extent caused in whole or in part by negligent acts or omissions of Boman, a subcontractor, anyone directly or indirectly employed by Boman or a subcontractor, or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss, or expense is caused in part by a party indemnified hereunder.

The separate indemnity provision contained in the subcontract can be summarized as follows:

> Subcontractor shall indemnify contractor against and save harmless from any and all loss, damage, injury, liability, and claims thereof for injuries to persons resulting directly or indirectly from subcontractors' performance of this agreement, regardless of the negligence of the contractor, provided that where such loss, damage, injury, liability or claims are the result of active negligence on the part of the contractor and are not caused or contributed to by omission to perform some duty also imposed on the subcon-

tractor, his agents or employees, such indemnity will not apply to such party guilty of such active negligence *unless the prime contract documents otherwise provide.*

Clearly, the scope of the duty assumed by the indemnitor in the two provisions is not the same. Jacobsen contends that in case of a conflict between the two provisions, the provision in the prime contract which it asserts was incorporated by reference into the subcontract should prevail. Jacobsen bases this contention on the italicized words contained in the above summary of the provision in the subcontract, i.e., "unless the prime contract documents otherwise provide."

In accordance with that contention, Boman is bound to indemnify Jacobsen from and against all damages arising out of or resulting from the performance of Boman's work but only to the extent they are caused in whole or in part by negligent acts or omissions of Boman or its subcontractor, CCC & T. It is very likely that this provision was drafted with joint and several liability in mind and was designed to shield the contractor from liability for the negligent acts of others. The provision was written to require Boman to indemnify Jacobsen from Brown's damages but only to the extent they are found to have been caused in whole or in part by negligent acts or omissions of Boman or CCC & T. In view of the fact that section 78–27–38 limits Jacobsen's liability to its proportion of fault as may be found by the fact finder, the indemnity provision will not become operative in this case. Thus, summary judgment on the cross-claim was proper.

We reverse the order dismissing Jacobsen's third-party complaint against CCC & T, affirm the summary judgment on the cross-claim, and remand the case to the trial court for further proceedings.

HALL, C.J., and ZIMMERMAN, J., concur.

DURHAM, Justice, concurring:

I write separately to note that Justice Stewart's dissent misreads the majority opinion in *Sullivan v. Scoular Grain Company*, 853 P.2d 877 (Utah 1993), when he

claims that the court ignored legislative intent and "decided the issue on the basis of what it deemed to be good policy." As the author of that opinion, I am not of the view that its result was necessarily "good policy"; I believed it to be dictated by the statutory scheme viewed in its entirety. Like Justice Stewart, I hope that the legislature will address the issue.

STEWART, Justice, dissenting:

I dissent for the reasons stated in my dissent in *Sullivan v. Scoular Grain Co.*, 853 P.2d 877 (Utah 1993). The language of the Liability Reform Act is crystal clear that CCC & T is not a "defendant" under the Act because it is immune from liability and that negligence may be allocated only among parties to the lawsuit, not nonparties such as CCC & T. The legislative history unequivocally demonstrates that the Legislature specifically addressed and rejected the result the majority reached in *Sullivan*. The Court ignored this, however, and decided the issue on the basis of what it deemed to be good policy.

The Court's rejection of clear statutory language and unequivocal legislative history will produce serious consequences for the statutory scheme embodied in the Workers' Compensation Act and/or the plaintiffs' constitutional rights. It appears that the Legislature ought to readdress the issue.