**CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER–DAY SAINTS, a Utah corporation sole, Plaintiff,**

v.

**QUEEN CARPET CORPORATION, a Georgia corporation, et al., Defendants.**

**No. Civ. 2:96–CV–325C.**

United States District Court, D. Utah, Central Division.

May 11, 1998.

---

David M. Wahlquist, Kirton & McConkie, Salt Lake City, UT, for Plaintiff.

E. Scott Savage, Berman Gaufin Tomsic & Savage, Salt Lake City, UT, for Defendants.

## ORDER

CAMPBELL, District Judge.

This matter is before the court on the motion of defendant Queen Carpet Corporation to dismiss the cross-claim for apportion-

ment of fault made against it by defendant Para–Chem Southern, Inc. Third-party defendant Centrex, Inc., also moves to dismiss the claims for apportionment made against it by third-party plaintiffs Para–Chem and Foamex, L.P. Having determined that oral argument would not materially assist in the resolution of the questions presented, the court now enters the following order based upon the pleadings and applicable legal authorities.

### Background

This dispute arises from the faulty installation of carpeting in a number of properties owned by the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints ("the Corporation"). The Corporation brought the present lawsuit, alleging, among other things, negligence on the parts of defendants Para–Chem and Foamex (hereafter "third-party plaintiffs"). The third-party plaintiffs then filed cross-complaints against Queen Carpet and third-party complaints against Centrex. (Queen Carpet and Centrex will hereafter be referred to as the "third-party defendants"). The third-party plaintiffs assert no substantive claims and seek only an apportionment of fault between themselves and the third-party defendants.

The third-party defendants have moved to dismiss the third-party complaints, asserting that a state law claim for "apportionment" is not cognizable under Fed.R.Civ.P. 13 or 14. Those two rules, the third-party defendants argue, allow the assertion of cross- or third-party claims only when the third-party defendant "is or may be liable" to the third-party plaintiff. Because a claim for allocation of fault is not an assertion of liability, the third-party defendants conclude that the third-party complaints fail to state a claim under the federal rules. Though the third-party defendants do not say so explicitly, they are clearly asserting that federal procedure must prevail over state law.

### Analysis

#### I. The Dictates of Erie.

For the last 60 years, any purported conflict between state law and the federal rules in a diversity action has been resolved by resort to the framework first laid out in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Greatly simplified, the basic command of *Erie* is that the rights of parties under state law should not vary between the federal and state courts. For the *Erie* court, state law rights would be adequately protected if the federal courts adhered to their own rules of procedure but adopted "substantive" state law for use in diversity actions. Despite the facial simplicity of this substance-procedure dichotomy, application of the *Erie* model has proved a "challenging endeavor." *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 425–27, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996). Because of the conceptual difficulties, virtually each examination of the problem has produced new guidance from the Supreme Court. *See, e.g., Guaranty Trust Co. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) (state rule is to be applied if it dictates a different outcome than the federal rule); *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 536, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) (state rule is to be applied if it is "bound up" with state created rights and does not intrude upon essential characteristics of the federal system); *Hanna v. Plumer,* 380 U.S. 460, 471–72, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (state rule should not be applied if it directly collides with a federal rule of civil procedure).

In the Tenth Circuit, when confronting *Erie* questions, the "first analytic step" is to determine whether the state law in question conflicts with a federal rule of civil procedure. *Trierweiler v. Croxton and Trench Holding Corp.,* 90 F.3d 1523, 1539 (10th Cir. 1996). If the state law directly collides with the federal rule, then the federal rule automatically prevails. If there is no direct collision, this court must make the further determination, keeping in mind both state and federal interests, whether refusal to apply the state rule would lead to forum-shopping or the inequitable administration of the laws. *Id.* at 1540.

#### II. Is There Direct Conflict Between the Utah Liability Reform Act and the Federal Rules of Civil Procedure?

A mere similarity of interests between the state and federal rule is insuffi-

cient for the federal rule to automatically preempt state law. As Supreme Court decisions have made clear, the question is "whether, when fairly construed, the scope of [the federal rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of [the state] law." *Burlington Northern R. Co. v. Woods,* 480 U.S. 1, 4–5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) (quoting *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–50 and n. 9, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Hanna,* 380 U.S. at 471–72, 85 S.Ct. 1136).

▇ In this case, the federal rule and state law do not directly collide. Federal Rules of Civil Procedure 13 and 14 govern cross-claims and third-party claims. These two rules allow the assertion of cross- and third-party claims against persons who "are or may be liable" to a defendant in the initial litigation. The federal rules do not purport to define what constitutes a "liability" or other cause of action for which a third party may permissably be joined.

By contrast, the Utah Liability Reform Act creates a cause of action under state law. The Act provides for the joinder of any person "who may have caused or contributed to the injury or damages for which recovery is sought, for the purpose of having determined their respective proportions of fault." Utah Code Ann. § 78–27–41 (1996). Because parties seeking such an allocation of fault often have no direct cause of action against their co-tortfeasors, the Utah courts have recognized a cause of action for "apportionment" or "allocation." *See Brown v. Boyer–Washington Blvd. Assoc.,* 856 P.2d 352, 354 (Utah 1993) (holding that trial court committed reversible error by dismissing a third-party complaint that "sought only apportionment" of fault).

Thus, it is clear that there is no direct collision between the state and federal rule. The Utah Liability Reform Act creates a cause of action for apportionment; the federal rules provide a procedural framework for the assertion of claims against third parties and codefendants. Each "can exist side by side ... controlling its own intended sphere of coverage without conflict. ..." *Walker,* 446 U.S. at 752, 100 S.Ct. 1978.

III. *Would Refusal to Allow a Cause of Action for Apportionment in Diversity Proceedings Lead to Forum Shopping or the Inequitable Administration of the Laws?*

Because the federal rules do not directly conflict with state law, this court instead must determine whether the inability to assert a third-party claim for apportionment in diversity proceedings would lead to forum shopping or the inequitable administration of justice. *Trierweiler,* 90 F.3d at 1540.

A. *The Role of the Cross–Claim for Apportionment in Utah's Comparative Fault Scheme.*

In recent years, the cause of action for apportionment has assumed an increasingly significant role in Utah's comparative fault scheme. In *Brown v. Boyer–Washington Blvd. Assoc.,* 856 P.2d 352 (Utah 1993), the Utah Supreme Court addressed the cause of action for apportionment for the first time. The defendant in *Brown* had filed a third-party complaint seeking "only the apportionment of ... fault" to the plaintiff's immune employer. *Id.* at 353. The trial court dismissed the complaint, reasoning that the employer's immunity from suit meant that it could not be named even for purposes of apportionment. The Utah Supreme Court reversed, holding that dismissal of the third-party complaint was error. Of particular importance to the *Brown* court was the statutory command that no defendant be found "liable for any amount in excess of the proportion of fault attributed to it." *Id.* at 354 (citing Utah Code Ann. § 78–27–38). The court was concerned that, without the presence of the employer in the lawsuit, the factfinder might violate the statutory command by allocating the employer's fault to the remaining defendant.

The cause of action for apportionment assumed new significance following the decision of the Utah Court of Appeals in *Packer v. National Serv. Indus., Inc.,* 909 P.2d 1277 (Utah App.1996). In that case, the plaintiff,

Packer, brought suit against B.W. Norton Manufacturing Co. ("Norton") and National Service Industries, Inc. ("NSI"). Norton moved for summary judgment and Packer failed to oppose Norton's motion. *Id.* at 1278. Following Norton's release and after the trial with NSI as the lone defendant, NSI appealed the grant of summary judgment to Norton. The Court of Appeals held that NSI had no right to argue Norton's comparative fault, either at trial or on appeal, because it had not filed a cross-claim for apportionment pursuant to Utah R.Civ.P. 13(f). Absent such a cross-claim, "NSI was not a proper party to the motion for summary judgment brought by Norton." NSI's failure to comply with this requirement meant, of course, that it was ultimately liable for all of the fault not attributable to the plaintiff.

██ The import of the *Packer* decision was affirmed by the Court of Appeals in *National Serv. Indus. v. B.W. Norton Mfg. Co.*, 937 P.2d 551 (Utah App.1997).[1] In *National Service*, the court held that NSI could not bring a subsequent suit against Norton for apportionment because that would be tantamount to a claim for contribution, which the legislature abolished when it approved the Liability Reform Act. *Id.* at 555–56. As the Court of Appeals noted, its decisions in *Packer* and *National Service Industries* place the cause of action for apportionment at the very heart of the comparative fault regime:

> In reaching our conclusion, we recognize that prohibiting subsequent apportionment suits essentially requires joint tortfeasor codefendants to raise cross-claims against each other in the underlying tort action or else such claims may be lost. [C]ross-claims for apportionment are mandatory.... In circumstances such as here—where one codefendant moves for summary judgment against the plaintiff on the basis that it bears no liability—any other

defendant must file an apportionment cross-claim in order to have standing to oppose the other codefendant's motion. Because, as discussed above, the Act prohibits an apportionment claim from being brought outside the underlying tort action, the apportionment claim must be brought—if at all—as a cross-claim in the underlying suit or it is lost.

*Id.* at 556 & n. 2.

The critical importance given to cross-claims in *Packer* and *NSI* was extended to third-party claims by the Utah Supreme Court's recent decision in *Field v. Boyer Co. L.C.*, 952 P.2d 1078 (Utah 1998). In *Field*, the Utah Supreme Court held that a defendant could not seek allocation of fault to a nonparty, but must name that person by means of a third-party complaint for apportionment. *Id.* at 1082. The court acknowledged that the practical consequence of its decision was that the named defendant might be found liable for more than its actual proportion of fault in the event that it was unable to join the third-party defendant. *Id.* ("[D]efendants wishing to have their fault compared with nonparties [must] join such nonparties ... *or bear the burden if such people cannot be joined.*") (emphasis added). Nevertheless, the court felt its conclusion compelled by the statutory language of the Liability Reform Act.

██ The central role of the apportionment claim under *Packer, NSI*, and *Field* cannot be understated. *Packer* and *NSI* deny a joint tortfeasor any right to oppose a codefendant's motion for summary judgment unless it has filed a cross-claim for apportionment. *Field* denies the joint tortfeasor an opportunity to seek allocation of fault in the trial of the underlying tort unless it has first joined a codefendant by means of a third-party complaint for apportionment. *NSI* de-

---

**1.** The Court of Appeals, in this decision, clarified that *Packer's* "proper party" language derives from the doctrine of standing. The court did not fully explain, however, why the doctrine of standing, which inquires whether a party has the requisite "personal stake in the outcome of the legal dispute" *Provo City Corp. v. Willden*, 768 P.2d 455, 457 (Utah 1989), also demands the filing of a cross-complaint for apportionment.

Whatever the theoretical underpinnings of the *Packer* rule, the practical consequence is clear: each defendant in a negligence lawsuit is now required to file a cross-claim against every other defendant, and in turn to answer the cross-claims of every other defendant, simply to preserve the right to argue comparative fault prior to trial.

nies the joint tortfeasor the opportunity to seek an allocation of fault in a subsequent proceeding. Given the confluence of these decisions, a defendant's failure to file a claim for apportionment in the initial tort litigation may prevent that party from ever seeking a comparison of its fault with those of other tortfeasors under the Utah system.

### B. Failure to Apply the Utah Regime Would Lead to Vast Differences In Tort Litigation Between State and Federal Courts.

■ This court now must make the "typical, relatively unguided Erie choice." Hanna, 380 U.S. at 471, 85 S.Ct. 1136. There is some conflict, albeit not direct, between the federal rules, which allow the assertion of cross- and third-party claims for "liability," and the procedural tool devised by the Utah courts to allow assertion of claims for "apportionment." The question confronting this court is whether a decision to follow the federal rule, by allowing claims for "liability" only, would encourage forum-shopping or inequitable administration of the laws.

The Supreme Court has stated the inquiry as:

> whether application of the [state] rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a [party] to choose the federal court.

Hanna, 380 U.S. at 468 n. 9, 85 S.Ct. 1136. When the question is posed this way, the answer is clear. The federal interest embodied in Rules 13 and 14 is important, but cannot be said to protect a core element of the federal judicial system. See Byrd, 356 U.S. at 537, 78 S.Ct. 893 (Although state rule, which required certain legal claims to be tried only to a judge, might be outcome-determinative, its adoption by federal courts would disrupt "[a]n essential characteristic" of the federal jury system.).

In contrast, the procedural claim for apportionment is, by this point, intricately "bound up" with the system for adjudicating parties' rights under Utah law. Id. at 536, 78 S.Ct. 893. An entire panoply of rights (to argue a codefendant's liability, to seek allocation of fault to third parties, to restrict one's liability to one's proportionate share of fault) depend from the claim for apportionment. Under these circumstances, failure to allow claims for apportionment would lead to the very differences between state and federal litigation that Erie prohibits:

> [C]ases following Erie have evinced a broader policy to the effect that the federal courts should conform as near as may be ... to state rules even of [procedure] where the state rules may bear substantially on the question of whether the litigation would come out one way in the federal court and another way in the state court if the federal court failed to apply a particular local rule.

Byrd, 356 U.S. at 536–37, 78 S.Ct. 893. The court therefore concludes that it is in the best interests of the litigants, as well as the federal judicial system, to allow all claims for fault and for apportionment to be heard in one proceeding.[2]

### Order

■ For the reasons stated above, the motions to dismiss the cross- and third-party

---

2. Third-party defendant Centrex cites the case of *Baird v. Phillips Petroleum Co.*, 535 F.Supp. 1371 (D.Kan.1982), for the proposition that third-party complaints are an improper vehicle for seeking an apportionment of fault. *Baird* does indeed stand for that proposition, but it is factually distinguishable.

Under the Kansas comparative fault regime, "the negligence of all tortfeasors may be compared even if all tortfeasors are not made parties to the lawsuit." *Id.* at 1378. Under Kansas law, therefore, the federal court's refusal to allow a claim for apportionment under Rule 13 or 14 does not significantly alter a defendant's ability to protect its rights; fault may still be allocated to nonparties. Obviously, the Utah Supreme Court's decision in *Field* creates a very different balance of state and federal interests in this district. Assertion of federal primacy here could significantly limit the rights of the parties under state law.

claims for apportionment are DENIED.[3]

---

**3.** Centrex argues that the third-party complaint by Foamex is for contribution and not for apportionment at all. Centrex is correct that a claim for contribution is no longer permitted under Utah law. *NSI*, 937 P.2d at 556. Reading Foamex's complaint liberally, *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984), however, the court is satisfied that Foamex seeks nothing more than the permissable apportionment of fault.