Associate Chief Justice NEHRING,
dissenting:
T 77 I concur with the majority opinion in Parts I, ILA, and II.B. However, I respectfully dissent as to Part ILC of the majority opinion because I do not believe the legislature intended the Liability Reform Act (LRA) to allow for the allocation of fault for intentional torts.
178 When interpreting a statute, "it is axiomatic that this court's primary goal is to give effect to the legislature's intent in light of the purpose that the statute was meant to achieve." [12] In so doing, "we begin first by looking to the plain language of the [statute]." [13] I agree with the majority that the LRA is written in "broad, categorical terms." [14] The Act allows a party to allocate the "fault" that is attributable to the plaintiff, another defendant, immune persons, or non-parties."[15] And the statute defines "fault" as "any actionable breach of legal duty, act, or omission proximately eausing or contributing to injury or damages sustained by a person seeking recovery." [16]
{ 79 While I agree the definition of "fault" is broad, "we do not interpret the plain meaning of a statutory term in isolation. Our task, instead, is to determine the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme).[17] " The majority focuses on the term "act," concluding that "act" must logically and unambiguously encompass intentional torts.[18] Instead, I would evaluate the *637 text "in relation to the statute as a whole[ ] to determine its meaning,"[19] and would presume "the legislature used each word advisedly." [20] In considering the plain language, it is not surprising that the LRA speaks in broad terms because its purpose was to expand comparative negligence principles beyond what had been done in the 1973 Comparative Negligence Act.[21] Before passage of the LRA, contributory negligence could still act as a complete bar to recovery for suits brought in, for example, strict liability or products liability.[22] The LRA thus continued the move from the harsh results of contributory negligence to the moderating effects of comparative negligence.[23] But the harshness of contributory negligence was not a concern in the realm of intentional torts because it had never applied to such conduct.[24] As Dean Prosser explained, "[cJon-tributory negligence has never been, considered a good defense to an intentional tort such as a battery." [25] Thus, it seems strange to read a statute designed to cure the evils of contributory negligence to address a situation where contributory negligence never even applied. Moreover, the LRA's definition of "fault" supports this understanding because it uses language traditionally associated with negligence to define fault: any act or omission "proximately causing or contributing to" the injury or damages alleged.[26] This language is inapt for intentional torts. For example, it would be odd to say that Mr. Cooper "proximately caus[ed]" or "contri-but[ed] to" the sexual assault of AR. when he committed the assault.
€80 The legislature's use of the word "fault" instead of "negligence" should not be read to indicate a sea change in fault allocation. When the legislature expanded allocation principles from traditional negligence to doctrines like strict liability and products liability, it necessarily could not continue to use the word "negligence." This is because "negligence" is a legal term of art which *638 connotes the existence of a duty and a breach of that duty.[27] But strict liability and products liability do not involve any analysis of duty and breach; thus reference to "negligence" in such cases would be inaccurate. The broader term "fault" more aptly encompasses these doctrines.
1 81 The majority reasons that there is "no tenable notion of 'act' that does not extend to an intentional tort." [28] And thus, because "fault" is a broader term than "negligence," its application has no bounds.[29] But a broadening of fault allocation does not require unlimited expansion. The breadth of possible fault allocation remains cabined by the intent of the legislature. Conspicuously absent from the statute is any reference to intentional torts. The definitional section provides an illustrative list establishing that "fault" includes "negligence in all its degrees, comparative negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification, or abuse of a product."[30] This absence is also noticeable throughout the remaining sections of the statute-there is no reference in any of the statutory sections to an intentional act. Rules of statutory construction dictate that "omissions in statutory language should be taken note of and given effect." [31] Contrary to this canon, the majority reads the solitary term "act" to include intentional torts. But intentional torts are nowhere mentioned or alluded to in the statute. I believe that the illustrative list does not demonstrate any intent to expand allocation to intentional tort-feasors, and I would view the omission of intentional torts from the LRA as purposeful,[32]
182 Moreover, the statutory development of Utah's liability jurisprudence can inform our understanding of the legislative intent.[33] Prior to 1973, Utah recognized and applied the doctrine of contributory negligence.[34] As noted by the majority, the legislature abrogated the doctrine of contributory negligence in 1978 with the passage of the Comparative Negligence Act.[35] The purpose of the Comparative Negligence Act "was to ameliorate the harsh common law rules that made contributory negligence, no matter how slight, an absolute defense to an action by a plaintiff for negligence and barred all recovery." [36] The subsequent LRA amendments of 1986 effected two changes. The first was the abrogation of joint and several liability.[37] The second change "broadened the statute to apply comparative principles in products liability and breach of warranty cases so that defenses such as misuse, abuse of product *639 modification, ete., were no longer absolute bars to recovery but operated only to reduce a plaintiffs recovery, as in negligence cases." [38] However, today, the majority goes much further, extending allocation of fault to hitherto unknown territory.
183 In extending allocation of fault to intentional torts, the majority cites our 1981 opinion in Mulherin v. Ingersoll-Rand Company.[39] as putting the 1986 amendments "in perspective." [40]" While I agree that Mulke-rin puts the amendments in perspective, I disagree with the majority's reading of the case. In Mulherin, we were asked to decide whether comparative negligence principles applied to actions based in strict products liability and product misuse.[41] We stated that due to the defective condition of a product manufactured by the defendant and the misuse of that product by the plaintiff, "[bloth parties [could] therefore be said to be at fault in contributing to plaintiffs injuries." [42] A footnote to this statement reads, "als used in this context, the word 'fault' is not synonymous with 'negligence,/ but instead connotes responsibility." [43] The majority cites this footnote, but omits the important qualifier: "(als used in this context"namely, the context of products liability claims. The majority correctly notes that the 1986 Act adopted the principles espoused in Mulhkerin,[44] because the legislature passed the LRA amendments in response to our decision in that case.[45] However, in so doing, the legislature did not adopt the majority's interpretation of "fault" as encompassing intentional torts. Instead, the legislature simply "broadened the statute" to apply comparative principles to cases involving "assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification, or abuse of a product." [46] These additions to the statute did incorporate the Mulherin opinion, but that decision had nothing to do with intentional torts. 'The legislative history confirms this: "Senator Lyle Hillyard stated during debate on the Act, 'I understand the word "fault" and that's negligence or not doing what you're supposed to, and that's a normal negligent recovery.'" [47] An attorney for the drafter of the bill responded, "This is a comparative negligence statute." [48] Additionally, the full name of the Liability Reform Act is "An Act Relating to the Judicial Code; Modifying Provisions Relating to Comparative Negligence; Specifying Duties of Jurors and Judges; Abolishing Joint and Several Liability and Rights of Contribution Among Defendants; and Defining Certain Terms." [49] The "amendment's title is telling." [50] The Act's history, evidenced by the floor debates and the Act's title, indicate that the LRA was not intended to encompass intentional torts. Furthermore, the fact that section 78B-5-818 remains titled "Comparative Negligence" further evidences the exclusion of intentional torts from fault allocation under the LRA.[51]
184 Furthermore, Mulherin's footnote seven, cited by the majority, provides another indication that intentional torts are not included in the statutory definition of fault.
*640 Both Mulherin[52] and the majority[53] cite a law review article by Dean John W. Wade entitled Products Liability and Plaintiff's Foult-The Uniform Comparative Fault Act.[54] The article explains, and the majority recognizes, that negligence and strict liability "tend to fade into each other and are not utterly different in kind." [55] Indeed, negligence, strict liability, products liability, and misuse, modification, or abuse of a product are not utterly different in kind, because these doctrines have their genesis in a hybrid of negligence tort action, breach of contract, and warranty of quality theories.[56] In contrast, intentional torts and negligence have long been viewed as different in kind.[57] In Field v. Boyer Co., Justice Stewart aptly illustrated the difficulties inherent in such comparisons: "Comparing a defendant's negligence and a rapist's intentional tort results in an absurdity; it is a comparison of unlikes, of apples and oranges." [58] And the majority agrees: "(intentional tortious conduct has always been deemed to be categorically different from nonintentional tortious conduct." [59]
85 In Cortez v. University Mall Shopping Center, the federal district court considered whether a defendant shopping mall could apportion fault under the LRA to an unknown assailant who kidnapped the plaintiff from the mall parking lot and assaulted her.[60] The court explained that "[the concepts of intentional tort liability and negligent fault do not lend themselves to easy comparison." [61] The court ultimately concluded that the LRA does not allow for the allocation of fault to intentional tortfeasors.[62] The court also noted that in situations where a defendant owes a duty to protect the plaintiff from a specific harm, permitting the defendant to shift fault to the assailant perverts that very duty.[63] I would agree with the courts in Cortes and many of our sister states [64] that intentional torts and negligence, *641 strict liability, and products liability claims are different in kind and not easily compared.
T86 Finally, as the majority recognizes, there are policy reasons that the legislature would not include intentional torts within the scope of the LRA. [65] Chief among them is the concern that allowing allocation to intentional tortfeasors could have the consequence of rendering the duty of reasonable care by others unenforceable.[66] "[IJt would be patently unfair to allow [defendants'] liability to a faultless, injured plaintiff to be reduced or even eliminated by the culpability of an intentional wrongdoer."[67] This rule would likely "depriviel the faultless plaintiff of an adequate remedy or any remedy at all" and it would "eviscerate defendants' duty to prevent such a wrong." [68] The majority acknowledges this possibility.[69] But the majority comforts itself that a jury "could easily" allocate significant responsibility to the unintentional tort-feasor.[70] colleagues' optimism.[71]
187 I am also wary of a categorical pronouncement that the LRA applies to all see-narios involving intentional torts, particularly where we have not answered the question of whether the legislature has abolished joint and several liability as to intentional tortfea-sors.[72] Commentators have remarked that the extension of fault allocation to intentional torts can implicate different seenarios, including allocation between:. (1) an intentional tortfeasor plaintiff and a negligent defendant, (2) a negligent plaintiff and an intentional tortfeasor defendant, and (8) an innocent plaintiff and a negligent defendant and an intentional tortfeasor defendant.[73] Each of these seenarios may implicate different policy considerations.[74] Thus, for example, though the Restatement does apportion tort liability to intentional torts, it also explicitly notes that "IJntentional torts present special prob *642 lems of apportionment." [75] In attempting to address these concerns, the Restatement provides that a defendant who fails to protect another "from the specific risk of an intentional tort is jointly and severally liable for the share of comparative responsibility assigned to the intentional tortfeasor." [76] Such a rule would address the situation presented in the current case and would not leave an innocent plaintiff with the possibility of no recovery. But the LRA says nothing of the various scenarios that implicate such fault allocation and indeed, as explained above, makes no mention at all of intentional torts.
[ 88 I highlight these concerns not to opine on the wisdom of various tort reforms but to support my belief that the majority does not give effect to the legislature's intent. The majority's decision today marks a stark departure from long-established tort lability jurisprudence in Utah. Indeed, the majority seems to recognize the significant move it makes. Despite its confident assertions that the statute is unambiguous,[77] the majority nonetheless admits that "the statute arguably leaves room for doubt on this question," [78] and notes that "the statutory question before us is difficult" and "might merit further attention in the legislature." [79] Given the language of the statute and the history of our tort liability doctrines, I am not persuaded that the legislature intended the LRA to allow for the allocation of fault to intentional tortfeasors. And I am not comforted by the idea that the legislature may someday give the matter "further attention." [80] I would therefore deny defendants' attempt to allocate fault to Mr. Cooper for his intentional tort.

. Biddle v. Wash. Terrace City, 1999 UT 110, ¶ 14, 993 P.2d 875 (internal quotation marks omitted).

. Carrier v. Salt Lake Cnty., 2004 UT 98, ¶ 30, 104 P.3d 1208.

. Supra ¶ 46.

. Urax Cone § 78B-5-818(4)(a).

. Id. § 78B-5-817(2).

. Olsen v. Eagle Mountain City, 2011 UT 10, 112, 248 P.3d 465 (internal quotation marks omitted).

. Supra ¶¶ 51-52.

. Anderson Dev. Co. v. Tobias, 2005 UT 36, ¶ 40, 116 P.3d 323 (internal quotation marks omitted).

. Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints, 2007 UT 42, ¶ 46, 164 P.3d 384 (internal quotation marks omitted); see also Carrier, 2004 UT 98, ¶ 30, 104 P.3d 1208 ("[We should give effect to any omission in the [statutory] language by presuming that the omission is purposeful."); Biddle, 1999 UT 110, 114, 993 P.2d 875.

. See Field v. Boyer Co., 952 P.2d 1078, 1086 (Utah 1998) (Stewart, J., concurring in part and dissenting in part).

. See Mulherin v. Ingersoll-Rand Co., 628 P.2d 1301, 1303 (Utah 1981) (noting that the earlier 1973 Comparative Negligence Act did not settle the question of whether plaintiff's contributory negligence bars recovery in a products liability suit "since that statute only applies to the defense of contributory negligence in an action 'to recover damages for negligence or gross negligence' ").

. See Hale v. Beckstead, 2005 UT 24, 119, 116 P.3d 263 ("'Under the prior [contributory negligence] approach, a person who bore any portion of fault, no matter how slight, for his own injuries was barred from recovering against the primary tortfeasor."); see also supra ¶¶ 59-60 (explaining the expansion of comparative fault under the LRA).

. See Allan L. Schwartz, Annotation, Applicability of Comparative Negligence Principles to Intentional Torts, 18 ALR. 5mm 525 (1994) ("'Before comparative negligence was widely adopted, it was black-letter law that contributory negligence principles were not a defense to an intentional tort action. And under comparative negligence, this same defense of nonapplicability to intentional torts carried over and became the general rule, so that there would be no apportionment of damages where an intentional tort was involved.").

. W. Pace Kegron et al., & KeETON ON THE Law or Torts § 67, at 477 (5th ed.1984). Rather, in the context of intentional torts, a defendant may raise an affirmative defense-for example, privilege or consent. See id. § 16, at 109 (''The question of 'privilege' as a defense arises almost exclusively in connection with intentional torts.... Negligence ... is a matter of risk and probability of harm; and where the likelihood of injury to the plaintiff is relatively slight, the defendant will necessarily be allowed greater latitude than where the harm is intended, or substantially certain to follow.").

. Uru Cope § 78B-5-817(2). "Proximate cause" is a legal fiction developed within the doctrine of negligence as a policy decision of when to cut off liability. See Dowell Div. of Dow Chem. U.S.A. v. Del-Rio Drilling Programs, Inc., 761 P.2d 1380, 1384 (Utah 1988) ("Proximate cause is a legal construct calling for a legal conclusion.... It is common place in the law that an act, omission, or force may be an actual cause, but not a proximate cause." {internal quotation marks omitted)).

. See Buack's Law Dictionary 1133 (9th ed.2009) (defining "negligence" as "[the failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation"").

. Supra ¶ 51.

. Curiously, however, the majority is willing to erect a boundary when it comes to application of the LRA to breach of contract claims, reasoning 'that "limit[ing] [the LRA's] principle of fault to tortious acts or omissions" is a "better construction" even though the language of the statute "could conceivably be read" to apply to contracts. Supra ¶ 71 n. 10.

. Uran Cope § 78B-5-817(2). I do not quibble with the majority that an illustrative list such as provided in this section is not exhaustive. See supra 153. But that does not mean it cannot inform our understanding of the text. If we are to "presume that the legislature used each word advisedly," Martinez, 2007 UT 42, ¶ 46, 164 P.3d 384 (internal quotation marks omitted), I would not consider such a list to be "inconsequential," supra ¶ 53.

. Biddle, 1999 UT 110, ¶ 14, 993 P.2d 875 (internal quotation marks omitted).

. Marion Energy, Inc. v. KFJ Ranch P'ship, 2011 UT 50, 114, 267 P.3d 863 ("[Wle presume[] that the expression of one [term] should be interpreted as the exclusion of another." (second and third alterations in original) (internal quotation marks omitted)).

. See supra ¶ 46 (interpreting the LRA as "informed by the history and evolution of our statutory scheme").

. See Jensen v. Intermountain Health Care, Inc., 679 P.2d 903, 907 (Utah 1984) (explaining that the 1973 Comparative Negligence Act sought "to alleviate the harshness of the old common law doctrine").

. Supra ¶ 44.

. Field, 952 P.2d at 1085 (Stewart, J., concurring in part, dissenting in part).

. See Utah Cope § 78B-5-818(3).

. Field, 952 P.2d at 1086 (Stewart, J., concurring in part, dissenting in part).

. 628 P.2d 1301 (Utah 1981).

. Supra ¶ 61.

. 628 P.2d at 1303.

. Id.

. Id. at 1303 n. 7 (emphasis added).

. See supra ¶ 62.

. See Floor Debate S.B. 64, Utah Senate, 46th Leg.1986, Gen. Sess., Senate Day.31, Records No. 63 (Feb. 12, 1986). .

. Urtax Cope § 78B-5-817(2).

. Field, 952 P.2d at 1086 (Stewart, J., concur- - ring in part, dissenting in part) (quoting Floor Debate S.B. 64, Utah Senate, 46th Leg.1986, Gen. Sess., Senate Day 31, Records No. 63 (Feb. 12, 1986)).

. Id.

. 1986 Utah Laws 470 (emphasis added).

. Gressman v. State, 2013 UT 63, ¶ 64, 323 P.3d 998 (Lee, J., dissenting).

. The majority, however, views this heading as a mere historical vestige that is easily dispensed with. Supra ¶¶ 56-58.

. 628 P.2d at 1303 n. 7.

. Supra ¶ 61.

. 29 Mercer L. Rev. 373 (1978).

. Supra ¶ 61 (citing Mulherin, 628 P.2d at 1303 n. 7). i

. See 1 Davin G. Owen & Mary J. Davis, Owen & Davis on Propucts Lmasmumy § 1.3 (4th ed.2014) ("[Products liability law] is a mixture of tort law-negligence, strict liability in tort, and deceit-and of the contract law of sales-mostly warranty."); Restatement (Trip) or Torts. Prop-vets § 1 cmt. a (1998) ("In the early 1960s, American courts began to recognize that a commercial seller ... should be liable in tort for harm caused by the defect regardless of the plaintiff's ability to maintain a traditional negligence or warranty action.").

. See Field, 952 P.2d at 1083 (Stewart, J., concurring in part, dissenting in part); see also Veazey v. Elmwood Plantation Assocs., 650 So.2d 712, 719-20 (La.1994) ("Because we believe that intentional torts are of a fundamentally different nature than negligent torts, we find that a true comparison of fault based on an intentional act and fault based on negligence is, in many circumstances, not possible."); Brandon ex rel. Estate of Brandon v. Cnty. of Richardson, 261 Neb. 636, 624 N.W.2d 604, 620 (2001) (Negligent and intentional torts are different in degree, in kind, and in society's view of the relative culpability of each act."); Turner v. Jordan, 957 S.W.2d 815, 823 (Tenn.1997) ("[Nlegligent and intentional torts are different in degree, in kind, and in society's view of the relative culpability of each act.").

. 952 P.2d at 1088 (Stewart, J., concurring in part, dissenting in part).

. Supra ¶ 71 (quoting Field, 952 P.2d at 1083 (Stewart, J., concurring in part, dissenting in part)); see also 3 Dan B. Et aL, Tur Law or Torts § 496 (2d ed.2014) ("Most jurisdictions do not make such comparisons.").

. 941 F.Supp. 1096 (D.Utah 1996).

. Id. at 1099.

. Id. at 1100. In arriving at its decision, the court also noted the absence of any reference to intentional torts in the statutory language and applied the canons of noscitur a sociis and ejus-dem generis. Id.

. Id. at 1099 ("The duty of the defendant is to act against the anticipated criminal wrong of another to prevent the misconduct of the third person. To require comparison distorts the protections a plaintiff should be able to claim from a defendant's duty to protect." (footnote omitted)).

. See Thomas A. Eaton, Who Owes How Much? Developments in Apportionment & Joint & Several Liability Under 0.C.G.A. § 51-12-33, 64 Mercer L.Rev. 15, 17 & n. 13 (2012) (collecting cases) ("The vast majority of states take the same position: comparative fault is not a defense to an intentional tort."); see also Kansas State Bank & *641 Trust Co. v. Specialized Transp. Servs., Inc., 249 Kan. 348, 819 P.2d 587, 606 (1991) ("[NJegligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent."); Brandon, 624 N.W.2d at 620 ("[It would be irrational to allow a party who negligently fails to discharge a duty to protect to reduce its liability because there is an intervening intentional tort when the intervening intentional tort is exactly what the negligent party had a duty to protect against."); Turner, 957 S.W.2d at 823 ("Such comparison ... reduces the negligent person's incentive to comply with the applicable duty of care.").

. Supra ¶ 69.

. See 3 Doss, supra note 59, § 493 (recognizing that policy goals could be defeated where joint and several liability is abolished and fault is apportioned between an intentional tortfeasor and a negligent tortfeasor with a duty to protect against that very intentional tort).

. Field, 952 P.2d at 1088 (Stewart, J., concurring in part, dissenting in part).

. Id.

. Supra tentional tort-feasor." colleagues' optimism." I do not share my 69 (noting that extending comparative fault to intentional torts "may threaten to dampen incentives of a defendant who has a duty to undertake due care in preventing acts of intentional misconduct").

. Supra ¶ 71.

. See, e.g., Brandon, 624 NW.2d at 611 (in wrongful death action, court reduced liability of county and sheriff by allocating 85 percent fault to murderers and 1 percent fault to victim's own negligence). A number of our sister states are rightly concerned that, in the face of an intentional harm, juries may not allocate significant fault to parties that are merely negligent. See, e.g., Veazey, 650 So.2d at 719 ("[Any rational juror will apportion the lion's share of the fault to the intentional tortfeasor when instructed to compare the fault of a negligent tortfeasor and an intentional tortfeasor...."); Brandon, 624 N.W.2d at 620 ("Fact finders are likely to allocate most, if not all, of the damages to the intentional tort-feasor due to the higher degree of social condemnation attached to intentional, as opposed to negligent, torts."); 3 Domps, supra note 59, § 498 (''The issue is critical because the negligence of the landlord, no matter how great, will often be perceived as tiny in comparison to the fault of the rapist...."); see also Ellen M. Bublick, Who Is Responsible for Child Sexual Abuse? A View from the Penn State Scandal, 17 J. Genper, Race & Just. 297, 304-07 (2014) (expressing concern that allowing apportionment of fault to intentional tortfeasors will negatively impact sexual abuse victims).

. See Jedrziewski v. Smith, 2005 UT 85, ¶¶ 3-23, 128 P.3d 1146.

. 3 Dosss, supra note 59, § 496.

. Id. ('The difference in the various contexts counsels for caution in making a category-wide rule. ...").

. Restatement (THirp) or Torts. ArrortionmENt Biuity § 1 emt. c (2000).

. Id. § 14; see also id. § 12 ermt. a (retaining joint and several liability for intentional tortfea-sors, even in jurisdictions that have abolished joint and several lability).

. Supra ¶¶ 55, 76.

. Supra ¶ 46.

. Supra ¶ 76.

. Supra ¶ 76.